703 P.2d 1357

**Lyle C. ABEL and Ruthe M. Abel, husband and wife, Plaintiffs-Appellants,**

v.

**SCHOOL DISTRICT NO. 413, Twin Falls County, State of Idaho, Defendant-Respondent.**

**No. 15679.**

Court of Appeals of Idaho.

July 18, 1985.

---

Lloyd J. Walker, P.A., Twin Falls, for plaintiffs-appellants.

Richard D. Greenwood, Twin Falls, for defendant-respondent.

HUNTLEY, Acting Chief Judge.

By this appeal we are asked to decide whether the trial court, sitting without a jury, properly dismissed an action for specific performance of a contract, or in the alternative, damages, brought against School District No. 413, Twin Falls County, Idaho. We reverse the trial court's dismissal.

The trial court's memorandum opinion setting forth the relevant facts in support of its order of dismissal reads in part:

The parties entered into a contract for the sale of a certain piece of real estate on or about May 31, 1977. Under the terms of the contract, the School District was to take title to approximately 10 acres of land for which it would pay the plaintiffs $75,000.00. The instant dispute arose over Paragraph 14 of the contract which reads:

14. Buyer shall forthwith install five foot high chain link fence around the outside perimeter of the property acquired from Sellers at Buyer's expense when Buyer commences use of or construction on the property described in Exhibit "A" hereto.

The evidence reflects that shortly after the signing of the contract, the School District took possession of the 10-acre parcel and has remained in possession ever since. The property in question was used as farmland prior to the execution of the contract and continues as such to this date.

At the time the contract was formed between the parties, it was contemplated that the School District would float a bond issue before the public for the purpose of expanding the school facilities. The School Board purchased the instant property with that purpose in mind. However, the bond issued [sic] failed at election, and the school expansion never took place. Therefore, the School District has not proceded [sic] to construct a fence around the property.

The plaintiff has requested that the fence be built on several occasions. The first year or two that the school owned the property, it was farmed by the same tenants who had farmed the land when it was owned by Mr. Abel. Mr. Abel, however, did not request or make demand for the construction of the fence until approximately the third summer when it was farmed by the "ag boys", who were

students at the high school who were members of the Future Farmers of America.

Mr. Abel stated in his deposition of February 29, 1984, and which was read into the record, that he first told the School Board to build the chain link fence:

> ... when the ag boys took it over I knew there was going to be several of them out there irrigating this and that, they are no different than any other kids, they play, they go out—you know, they are liable to be out there playing ball or anything else. I mean, it's just they are young people.

In regard to this request and all subsequent requests, the School Board declined to construct the fence.

The parties are directly opposed in their interpretation of Paragraph 14 of the contract. Specifically, they disagree over the term "use of" the property. The plaintiffs claim that "use of" means the mere taking of possession of the property. The School District interprets it to mean the time when the property is used for school purposes.

It is not disputed that the School District is obligated to build a chain link fence at some point in time. Since the parties do not agree on the meaning of the language used in Paragraph 14, and since the term represented a latent ambiguity, this court must make reference to the surrounding facts and circumstances of the contract in order to determine its meaning.

It should be noted at the outset that Paragraph 14 requires that the fence be built when the "... buyer commences use of or construction on the property...." Since the obligation to build the fence is written in the alternative, it is very clear that the parties did not intend that the School District be obligated to build said fence upon the mere taking of possession of the property. If the court was [sic] to accept the plaintiffs' interpretation, in so doing, it would delete any meaning from the use of those two alternatives in Paragraph 14. Therefore, Paragraph 14 does not require the School District to build a fence upon the mere taking possession of the property.

The plaintiffs further argue that since the School District is using the property, it is required to build the chain link fence. This, however, is not consistent with the actions of the plaintiff prior to the filing of this lawsuit. Mr. Abel did not request that the fence be built until approximately two years after the School District took possession of, and began use of the property. Mr. Abel only requested construction of the fence after students at the high school began farming the property, and because he was fearful that they would be playing in the fields. What this evidences is that Mr. Abel was concerned that a fence be built when the land was utilized for school purposes: i.e., where it was used by students that would be going to and from the school building or playing on the school grounds.

This is also consistent with the fact that the contract calls for the construction of a chain link fence, and that in proving damages both sides submitted bids on fences which were commensurate with specifications for fencing required by the state and the School District to be placed around school facilities. It would appear from Mr. Abel's actions prior to the filing of this lawsuit, that his interpretation of the language in Paragraph 14 was not inconsistent with that argued by the School District.

Therefore, this court holds that the meaning attributed to Paragraph 14 of the contract by the School District is the one originally intended by the parties. Therefore, until such time as the 10 acres in question is used for traditional school purposes or construction begins thereon, the School District is under no obligation to construct the chain link fence. The plaintiffs' request for relief is hereby denied in all respects on the ground that the School District is not in breach of the contract, and the plaintiff, therefore, fails to qualify for any relief thereunder. This case is hereby dismissed.

The intent of the parties should, if possible, be ascertained from the language contained in their contract, and unless it contains absurdities or contradictions, the contract is best evidence of the parties' intent. *Suchan v. Suchan*, 106 Idaho 654, 682 P.2d 607 (1984). "Where a contract is clear and unambiguous, determination of its meaning and legal effect are questions of law to be decided by the court." *International Engineering Co. v. Daum Industries, Inc.*, 102 Idaho 363, 630 P.2d 155 (1981). "Courts, both in law and in equity, must respect contract provisions to which parties have lawfully agreed." *Nichols v. Knowles*, 87 Idaho 550, 394 P.2d 630 (1964). "A court should not make a contract for the parties or interpret it to mean something which it in itself does not contain." *Miller v. Remior*, 86 Idaho 121, 383 P.2d 596 (1963).

In the instant case we cannot agree with the trial court that the words "use of" or "construction on" were ambiguous. Though the School District argues that "use of" means "change in use of" or "use for a traditional school purpose," such a meaning can not be inferred. We conclude that the provision "use of" or "construction on" pertains to all school uses, including its traditional use as farmland.

Certainly the School District has had the "use of" this property since it was purchased in 1977. It has been farmed by student members of the Future Farmers of America and used by the school's Booster Club. Since 1977 the School District, not the Abels, has had the right to use the property in whatever lawful manner it chose.

The fact that the school bond election failed after the land was purchased is irrelevant to the resolution of the present controversy. Such a contingency was not provided for in the contract. Therefore, we reverse and remand for entry of a judgment consistent herewith.

Reversed. Costs to Appellants. No attorney fees.

DONALDSON and TOWLES, Acting JJ., concur.