815 P.2d 469

**USA FERTILIZER, INC., an Idaho corporation, Plaintiff–Appellant,**

v.

**IDAHO FIRST NATIONAL BANK, a national banking organization, Defendant–Respondent.**

No. 18642.

Court of Appeals of Idaho.

July 24, 1991.

Jones, Christensen, Jorgensen, Robison, Holmes & Robison, Pocatello, for plaintiff-appellant.  Craig R. Jorgensen argued.

Racine, Olson, Nye, Cooper & Budge, Pocatello, for defendant-respondent. John R. Goodell argued.

WALTERS, Chief Judge.

USA Fertilizer, Inc. brought an action seeking to hold Idaho First National Bank (Idaho First) secondarily liable on the unpaid account of a bankrupt farmer. On appeal from the judgment entered in favor of Idaho First, we are asked to determine whether the district court erroneously interpreted a letter of guarantee. For the reasons explained below, we affirm.

## FACTS

Early in 1987, Sterling J. Smith, a farmer in Shelley, Idaho, applied for an operating loan with Idaho First. Smith subsequently approached USA Fertilizer to obtain fertilizer for his farm. However, when USA Fertilizer contacted Idaho First to confirm Smith's financing, it learned that Smith's application for the season-long operating loan had not yet been processed. Anticipating that the loan would be approved within the next month, Idaho First orally committed to guarantee up to $15,000 for the initial delivery of fertilizer to Smith's farm. Based upon this assurance, USA Fertilizer authorized the first delivery of fertilizer, and the fertilizer was applied to Smith's fields on April 1 and 2, 1987. USA Fertilizer prepared invoices totaling $11,-424.43 and submitted them to Smith on April 7.

On April 6, Smith met with Idaho First's loan officer, John Catmull, and executed various documents, including an application for a letter of credit in favor of USA Fertilizer and a promissory note by which Smith, apart from his season-long financing, agreed to repay any sums that the bank advanced to USA Fertilizer. On behalf of the bank, Catmull executed an irrevocable standby letter of credit in the amount of $15,000 in favor of USA Fertilizer. How-

ever, none of these documents were delivered to USA Fertilizer, nor was the fertilizer company informed of their existence.

On April 8, Idaho First issued a letter to USA Fertilizer stating the bank's commitment to "the payable amount of $15,000.00 for a term of 30 days for Sterling J. Smith." The letter continued, "At that time, the account will be considered delinquent and require advance notice be sent to Sterling Smith for payment. This portion will be paid to your company upon notice from Sterling Smith." The terms of the letter caused concern to Art Nielson, USA Fertilizer's president and primary stockholder, who felt that because the billing invoice sent to Smith would not be delinquent until thirty days had lapsed, i.e., until May 7, his company would not have an adequate opportunity to make a timely demand upon the bank for payment.[1] After USA Fertilizer's sales representative, Lynn Hammond, voiced this concern to Idaho First, the bank issued a new letter on April 10, 1987, which read as follows:

Idaho First National Bank of Shelley, Idaho has committed to the payable amount of $15,000.00 for a term of 30 days for Sterling J. Smith. At that time, the account will be considered delinquent and require advance notice be sent to Sterling Smith and Idaho First National Bank, Box W, Shelley, ID 83274, for payment. This portion will be paid to your company upon notice of it's [sic] delinquency.

Upon receipt of this letter, Nielson was still dissatisfied and on April 15 he telephoned the Idaho First's loan officer, Mr. Catmull, to further discuss the terms of the guarantee. Although this discussion did not result in another letter being issued, Nielson made a written notation that the letter was "negotiable" after May 7, 1987. On April 20th, Idaho First approved Smith's operating loan, which budgeted $70,000 for fertilizing expenses. Idaho First advised USA Fertilizer of Smith's loan approval several

1. USA Fertilizer billed Smith for the fertilizer on April 7. According to the terms of the billing invoice, stating that Smith had thirty days to pay the bill before it became past due, the bill was not delinquent until May 7. Idaho First's letter of April 8th committed the bank for a term of thirty days, that is, through May 8, allowing USA Fertilizer only one day to make its demand. Nielson was concerned because the letter provided insufficient time for notifying both Smith and the bank within the one-day period.

days later. After receiving notice of that approval, USA Fertilizer authorized a second application of fertilizer to Smith's fields on April 24.

On May 7, 1987, Smith gave a check for $11,424.43 to USA Fertilizer, in full payment of the initial application of fertilizer. USA Fertilizer continued to supply Smith with fertilizer through July, 1987, for which Smith made some additional payments. However, Smith eventually filed for and received a discharge in bankruptcy, leaving an unpaid account with USA Fertilizer of over $50,000. In January of 1988, USA Fertilizer made demand upon Idaho First for payment of Smith's overdue account. When the bank denied the claim, USA Fertilizer filed this action, alleging that the fertilizer component of $70,000 in Smith's operating loan had assured USA Fertilizer that this amount was available to pay Smith's fertilizer bill, and that this assurance constituted an enforceable guarantee.[2] USA Fertilizer also sought to hold the bank liable on the basis of the thirty-day letter of guarantee.[3] Following a bench trial, the district court rejected each of the theories advanced by USA Fertilizer and entered judgment in favor of Idaho First. On appeal, USA Fertilizer contends that the April 10 letter represented a continuing guarantee extending to all unpaid billings incurred throughout the 1987 crop season, and that Idaho First should be held liable for Smith's outstanding account under that guarantee.

## STANDARD OF REVIEW

The central issue in this appeal is whether the district court erroneously interpreted Idaho First's April 10 letter to USA Fertilizer which guaranteed payment "for a term of 30 days." In considering this issue, we note that the primary aim in interpreting all contracts is to ascertain the mutual intent of the parties at the time the contract was made. *Jeff D. v. Andrus*, 899 F.2d 753 (9th Cir.1989); *Rutter v.*

*McLaughlin*, 101 Idaho 292, 612 P.2d 135 (1980). The intent of contracting parties should, if possible, be ascertained from the language of the agreement, as the words used are the best evidence of the parties' intent. *Abel v. School Dist. No. 413*, 108 Idaho 982, 703 P.2d 1357 (Ct.App.1985); RESTATEMENT (SECOND) OF CONTRACTS § 202 (1981). However, where the parties' intent cannot be understood from the language employed in the writing, intent becomes a question of fact to be determined in light of extrinsic evidence. *Jensen v. Westberg*, 109 Idaho 379, 707 P.2d 490 (Ct.App.1985). *See also* J. CALAMARI & J. PERILLO, THE LAW OF CONTRACTS § 312, at 124 (1977). Additionally, where the principal purpose or objective of the parties is ascertainable, the trier of fact may accord it great weight. *See Bischoff v. Quong–Watkins Properties*, 113 Idaho 826, 748 P.2d 410 (Ct.App.1987).

With respect to our standard of review, we note that where the interpretation of an agreement depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, it is to be determined by the trier of fact, whose findings we will not disturb on appeal absent a showing of clear error. *See Bischoff*, 113 Idaho at 828, 748 P.2d at 412. Otherwise, a question of interpretation of an agreement or promise is to be determined as a question of law, over which we exercise free review. *Moses v. Idaho State Tax Comm'n*, 118 Idaho 676, 799 P.2d 964 (1990); *Galaxy Outdoor Advertising, Inc. v. Idaho Trans. Dept.*, 109 Idaho 692, 710 P.2d 602 (1985). We also consider whether the trial court applied proper standards of interpretation. *See Luzar v. Western Surety Co.*, 107 Idaho 693, 692 P.2d 337 (1984). *See also* RESTATEMENT, *supra*, at § 208 comment f.

## I

The first issue raised by USA Fertilizer is whether the district court

---

2. The district court disposed of the question in favor of Idaho First on a motion for summary judgment, ruling that such assurances do not constitute an enforceable guarantee. USA Fertilizer does not take issue with the court's ruling on this appeal.

3. The thirty-day guarantee was not initially asserted by USA Fertilizer as a basis of liability in its demand upon the bank, but was set forth for the first time in USA Fertilizer's complaint.

erred by declining to apply the long-standing contract principle that an ambiguous writing is interpreted against its drafter. We observe, however, that rules of contract interpretation favoring one party's meaning over another's apply only where the trial court is forced to make a choice among reasonable interpretations; they do not override evidence of the meaning of the parties, but aid in determining meaning or legal effect where meaning is in doubt.[4] Where the parties attached the same meaning to the contractual term, it is to be interpreted in accordance with that meaning. *See* RESTATEMENT, *supra*, at 201(1) and comment c.[5]

In the present case, the language of the written guarantee reasonably can be read to accommodate either of the conflicting interpretations urged by the parties. Because the meaning of the contract is not clearly ascertainable from the written terms of the guarantee, the district court resorted to extrinsic evidence to determine the parties' intent. After considering all the evidence, the court, sitting as trier of fact, found that the parties had in fact mutually understood that Idaho First would commit to guarantee payment for only the initial, start-up application of fertilizer to Smith's fields. As a consequence of this finding, the court had no need to resort to additional rules of interpretation, and thus there was no error.

## II

USA Fertilizer next asserts that the district court erred in finding that the parties mutually understood the letter of guarantee to extend only to the initial delivery of fertilizer. USA Fertilizer maintains that the letter of guarantee was intended to be a continuous guarantee, and that the "30 day term" meant that USA Fertilizer could demand payment from Idaho First any time Smith's account was thirty days past due. In resolving this issue, our inquiry focuses on whether the evidence presented at trial was sufficient to support the district court's finding.

The trial transcript discloses the following. Mr. Catmull, Idaho First's loan officer, testified that the purpose of the bank's commitment to guarantee payment to USA Fertilizer, reflected in the April 8 and April 10 letters, was to allow Smith to begin his farming while the operating loan application was being processed. Catmull explained that USA Fertilizer had estimated the initial delivery of fertilizer would cost up to $15,000. Because it anticipated Smith's operating loan would be approved within thirty days, Idaho First agreed to an interim guarantee of payment covering the initial fertilizer application, up to $15,000. Catmull's testimony was corroborated by that of USA Fertilizer's sales representative, Lynn Hammond, who originally had contacted Idaho First to verify Smith's financing. Hammond restated that the purpose of the thirty-day guarantee was to help Smith prepare his fields and to ensure that the fertilizer company would not be "left hanging" pending the approval of the operating loan. Additionally, Hammond testified that once Smith's operating loan

---

4. *See, e.g.,* RESTATEMENT, *supra,* at § 201 (agreement interpreted in accordance with the meaning assigned by the more "innocent" of the parties); *Luzar v. Western Surety Co.,* 107 Idaho 693, 692 P.2d 337 (1984) (where trier of fact is unable to determine the intent of the parties, preference is given to the meaning which operates against the party drafting the agreement); RESTATEMENT, *supra,* at § 207 (preferring an interpretation favoring the public interest).

5. We note also that the *interpretation* of a contract is distinct from its *construction.* As stated above, rules of interpretation guide the trier of fact in determining the intention of the contracting parties. Rules of construction, on the other hand, determine the legal effect to be given a contract, once it has been interpreted. *See Bischoff,* 113 Idaho at 828, 748 P.2d at 414. The dispute underlying this appeal concerns only the interpretation of the contract. Although the district court cited the rule that a guarantee contract be interpreted in favor of the guarantor, that rule applies to contract construction—the legal of effect to be given an already interpreted contract. However, because the court found that the parties *in fact* shared a common understanding of the meaning of the contract, its referral to this principle of construction as one of interpretation was harmless.

had been approved, USA Fertilizer no longer looked to the letter of guarantee for payment but relied on funds being available for payment from the approved operating loan. This fact is further buttressed by the evidence showing that USA Fertilizer made no further deliveries of its product prior to receiving notice of the final approval of Smith's operating loan.

In further support of the district court's finding of intent, we observe that the discussions occurring subsequent to the issuance of the April 8 letter, and precipitating the issuance of the April 10 letter, centered on the short period of time—only one or two days—within which USA Fertilizer would be permitted to make its demand on the bank, should Smith's bill become delinquent. In response to this concern, Idaho First reissued the letter on April 10, expediting the process by which USA Fertilizer was to notify the bank of a delinquency, and, solely by virtue of the later date of the new letter, providing USA Fertilizer an additional two days for making a demand. However, the language of the letter confirming the bank's commitment to a payable sum of $15,000 "for a term of 30 days" was left unchanged. Moreover, although it is evident that USA Fertilizer desired a written letter of credit to cover the entire year's fertilizer costs, it is equally apparent from the record that Idaho First refused this request, adhering to the original terms of letter guaranteeing payment up to $15,000 for a limited duration of thirty days.

Based upon this record, we conclude that there was substantial evidence, albeit conflicting, to support the district court's finding of the parties' intent. We therefore hold that the district court did not err in its interpretation of the letter of guarantee. Additionally, we note that Smith's payment in full to USA Fertilizer for the initial application of fertilizer operated to discharge Idaho First's obligation as a matter of law. *McGill v. Idaho Bank & Trust Co.*, 102 Idaho 494, 497, 632 P.2d 683, 686 (1981); *Industrial Investment Corp. v. Rocca*, 100 Idaho 228, 232, 596 P.2d 100, 104 (1979). Accordingly, we affirm the district court's determination that Idaho First was not liable under the April 10 letter of guarantee.

### III

USA Fertilizer next asserts that, during a subsequent telephone conversation on April 15, 1987, Idaho First gave an additional "interpretation" of the letter which allowed USA Fertilizer to demand payment any time Smith's account was thirty days late. USA Fertilizer argues this evidence, not to show an oral modification, but to further clarify the parties' original understanding.[6] We fail to see the profit in this argument: USA Fertilizer does not contend that the district court excluded or limited its reception of evidence concerning the April 15th communication. Presumably, the district court considered that extrinsic evidence in arriving at its determination of the parties' original intent. However, to the extent USA Fertilizer seeks to argue the evidence as altering the original terms of the guarantee, we note that such an oral modification would be barred under the statute of frauds. I.C. §§ 9–505(2) and 28–5–104(1).

Alternatively, USA Fertilizer contends that the oral representations made during the April 15th conversation constituted a new, "original obligation" expressly excepted from the statute of frauds requirement of a writing. *See* I.C. § 9–506(3).[7] This argument must also fail.

---

6. We acknowledge that evidence of the parties' subsequent conduct may be admissible to explain or clarify the meaning intended by parties to a contract. However, this principle is pertinent to issues involving the applicability of the parol evidence exclusionary rule; it does not apply to avoid the operation of the statute of frauds.

7. Idaho Code § 9–506 provides:

A promise to answer for the obligation of another, in any of the following cases, is deemed an original obligation of the promisor, and need not be in writing:

. . . .

3. Where the promise, being for an antecedent obligation of another, is made ... upon consideration beneficial to the promisor, whether moving from either party to the

The statute requires that there be a new promise. However, the district court found that the April 15th conversation did not result in an agreement, either written or oral, that Idaho First would guarantee payment of Smith's account beyond the initial fertilizer application. Given Nielson's testimony, conceding that Catmull never specifically stated that the guarantee was open-ended, and Catmull's denial of ever making such a representation, we conclude that the district court's finding was not clearly erroneous, and thus we will not disturb it on appeal.

### IV

■ Finally, USA Fertilizer assigns error to the district court's determination that the document entitled Irrevocable Standby Letter of Credit (Letter of Credit) was unenforceable. USA Fertilizer asserts that the document—executed by Smith and Idaho First on April 6, 1987,—was a "letter of credit" within the meaning of Uniform Commercial Code, I.C. § 28-5-101 *et seq.* USA Fertilizer argues that, because it had requested a letter of credit and because Smith and Idaho First executed a letter of credit, the letter should be enforceable in favor of USA Fertilizer. We disagree.

■ Idaho Code § 28-5-106(b), which defines when a letter of credit is established in relation to a customer and the beneficiary, requires the delivery of either a letter of credit or an authorized written advice of its issuance, before it is effective. Here, the Letter of Credit was not delivered to USA Fertilizer.[8] Nor did the letters of April 8, 1987, and April 10, 1987, make any reference to the existence of the Letter of Credit. The beneficiary, in this case, USA Fertilizer, cannot rely upon the credit letter unless it was received. *See* I.C. § 28-5-106 comment 1. Moreover, USA Fertilizer conceded at trial that it had no knowledge of the existence of the Letter of Credit until February of 1988, when the

bank disclosed the document in response to USA Fertilizer's demand for payment. When questioned at the commencement of its case by the trial judge, USA Fertilizer indicated that it was not seeking to hold Idaho First liable under the terms of the Letter of Credit, but that it intended to utilize the document as evidence of Idaho First's internal policy. Because USA Fertilizer did not argue at trial the enforceability of the Letter of Credit as a theory of recovery, having essentially waived it in open court, we will not address that argument on appeal. *See Johnson Equipment, Inc. v. Nielson,* 108 Idaho 867, 702 P.2d 905 (Ct.App.1985); *Clear v. Marvin,* 86 Idaho 87, 383 P.2d 346 (1963).

### CONCLUSION

Having reviewed the record, including the trial transcript and exhibits admitted into evidence, we conclude that there exists sufficient, albeit conflicting, evidence to support the district court's interpretation of the letter of guarantee. Finding no error, we affirm the judgment entered in favor of Idaho First. Respondent Idaho First is entitled to an award of attorney fees pursuant to I.C. § 12-120(3), and of its costs, in an amount to be determined as provided in I.A.R. 40 and 41.

SWANSTROM, J., and M.M. SMITH, J. Pro Tem., concur.

---

antecedent obligation, or from another person.

**8.** Catmull testified that, although the bank used the Irrevocable Standby Letter of Credit form to secure the repayment obligation from Smith, it never intended to issue a letter of credit to USA Fertilizer. Instead, the bank chose to issue the more restrictive thirty-day, $15,000 letter of guarantee.