876 P.2d 148

**Mark FARNSWORTH and Julie Farnsworth, husband and wife, Plaintiffs–Respondents,**

**v.**

**DAIRYMEN'S CREAMERY ASSOCI-ATION, an Idaho corporation, Defendant–Appellant.**

No. 20643.

Court of Appeals of Idaho.

June 1, 1994.

Rehearing Denied June 28, 1994.

Weston & Richardson, Boise, for appellant. Richard E. Weston argued.

Hepworth, Nungester & Lezamiz, Twin Falls, for respondents. Jeffrey J. Hepworth argued.

WALTERS, Chief Judge.

This is an appeal from a summary judgment awarding severance pay to an employee. We are asked to determine whether the magistrate erred in interpreting the severance pay clause contained in the employer's "Employee Handbook," and whether the existence of disputed facts precluded summary judgment. For the reasons explained below, we affirm in part, vacate in part, and remand the case for further proceedings.

## Facts.

The facts pertinent to this appeal are as follows. Dairymen's Creamery Association ("DCA") had employed Mark Farnsworth in its Twin Falls operation since June, 1983. On March 15, 1991, DCA orally informed Farnsworth that, due to a reduction in its workforce,[1] his current position as "dock cooler supervisor" would be eliminated as of April 1, 1991. However, DCA offered Farnsworth continued employment either as a route salesman or as an hourly employee in the cooler division. According to DCA, Farnsworth contacted his supervisor later that day and accepted the hourly position in the cooler division, a position paying approxi-

---

1. The record reflects that DCA had been moving its operations from Twin Falls, where Farns- worth resided, to Boise.

mately one-half that of his current job as supervisor. Farnsworth, however, adamantly denies he ever accepted the lower-paying position, and denies that the alleged second conversation with his supervisor ever occurred. It is undisputed that Farnsworth did not work for DCA beyond Friday, March 29, 1991.

On Monday, April 1, Farnsworth sent DCA a letter requesting two-weeks' salary as severance pay, to which he claimed he was entitled under DCA's Employee Handbook ("the Handbook"). The Handbook in effect at the time contained a severance pay clause which read as follows:

SEVERANCE PAY

In the event it becomes necessary to terminate an employee *for causes as defined in the Employee Handbook,* or a result of an event or series of events as justifying reasons for termination, there will be no application of severance pay. If, on the other hand, *termination was without cause* and without a written two-week notice, the employee will be eligible for severance pay equivalent to two weeks full salary.

(Emphasis added.)

On April 4, Farnsworth met with his supervisor, who asked him to return to work and offered to extend Farnsworth's salaried position for two more weeks. The supervisor then handed Farnsworth a letter stating, "As we have discussed on March 15, 1991, we will no longer have need of a cooler supervisor due to business conditions. Your last day of employment will be April 17, 1991." Farnsworth did not respond to the offer and did not return to work. On April 22, DCA wrote to Farnsworth, rejecting his severance pay request "because there was no termination. Technically, you quit...."

Farnsworth timely filed a complaint claiming $1,215 in severance pay, and treble damages and attorney fees under I.C. §§ 45–615 and 45–617(4). On August 14, 1992, the magistrate entered summary judgment for Farnsworth. DCA appealed to the district court, which upheld the magistrate's order. This appeal followed.

**Issues.**

The question presented on appeal is whether the magistrate erroneously granted Farnsworth's motion for summary judgment. Specifically, we are asked to decide: (1) whether the magistrate erred in interpreting the Handbook to mean that a termination resulting from a reduction in force is a termination "without cause"; and (2) whether the disputed evidence that Farnsworth had accepted an offer of continued employment raised an issue of material fact precluding summary judgment.

**A. Standard of Review.**

■■■ We begin by noting our standards of review. On appeal from an order granting summary judgment, we freely review the pleadings, depositions, and admissions on file, together with affidavits, if any, to determine whether there is a genuine issue of material fact to be tried, and whether the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). The standards ordinarily applicable to a summary judgment motion require that the trial court, and the appellate court on review, liberally construe all controverted facts in favor of the party opposing the motion. *Harris v. State,* 123 Idaho 295, 847 P.2d 1156 (1992); *Anderson v. Ethington,* 103 Idaho 658, 651 P.2d 923 (1982).

■■■ However, where, as in this case, no jury has been requested and the facts are to be tried ultimately to the court, a somewhat different standard is employed. If the evidentiary facts are not disputed, the trial court may grant summary judgment despite the possibility of conflicting inferences, because the court alone will be responsible for resolving the conflict between those inferences. *Riverside Development Co. v. Ritchie,* 103 Idaho 515, 519, 650 P.2d 657, 661 (1982). Findings which are based on such inferences will not be disturbed on appeal if the uncontroverted evidentiary facts are sufficient to justify them. *Riverside,* 103 Idaho at 520, 650 P.2d at 661. Where, as here, the issues are the same as those considered by the district court sitting in an appellate capacity, we will review the magistrate's decision with due regard for, but independently from, the district court's decision. *Robinson v. Joint*

*School Dist. No. 331*, 105 Idaho 487, 670 P.2d 894 (1983).

## I. Did the magistrate err in interpreting the Severance Pay Clause?

■ The Handbook states that severance pay is not available where it becomes necessary to terminate an employee "for causes as defined in the Employee Handbook," but that an employee is eligible for severance pay if the termination was "without cause" and without written notice. Regrettably, the Handbook does not expressly define the term "for cause." Furthermore, the parties ascribed different, inconsistent meanings to that term. Farnsworth claims he reasonably understood "for cause" to refer to the "Standards of Conduct" section in the Handbook, which catalogs those "offenses of Standards of Conduct"—including misconduct and sub-

standard performance—which subject an employee to immediate action by his or her supervisor.[2] Farnsworth asserts that he was terminated due to a reduction in force, not for misconduct on his part, and therefore his termination was "without cause." Because DCA failed to provide a *written* two-week notice, Farnsworth continues, he was entitled to severance pay under the terms of the Handbook.

DCA, on the other hand, contends that it intended the term "for cause" to refer broadly to any and all of the reasons for terminations expressly contemplated in the Handbook, and that a termination "without cause" was intended to mean a termination for any reason not covered in the Handbook. Noting that the Handbook specifically defines a reduction in force as a "kind of termination,"[3]

**2.** That section provides:

> *Standards of Conduct.*
> We sincerely attempt to be fair and just in all dealings with all employees. Standards of Conduct have been developed for everyone in the company in order to maintain a principle of day-to-day relations with fellow employees. *The offenses of Standards of Conduct are identified below,* which are not intended to be all inclusive, but are typical of unacceptable conduct and *are subject to the following action by your supervisor:*
> A. IMMEDIATE REMOVAL FROM ACTIVE EMPLOYMENT
> 1) Possession or use of alcoholic beverages or illegal drugs or reporting for work under the influence of either.
> 2) Damage to company property due to negligence or willful destruction or defacing (including restrooms.)
> 3) Deliberate falsification of records, time cards or "clocking in" for another employee.
> 4) Theft of property belonging to the company, another employee or a customer.
> 5) Verbal threatening or malicious acts resulting in fighting, injury or horseplay on company premises.
> 6) Illicit and immoral conduct that interferes with company operations.
> 7) Insubordination, disobedience, or refusal to perform an assigned job.
> 8) Failure to return from leave of absence or vacation when scheduled without notification.
> 9) Gambling of any kind on the premises.
> 10) Carrying firearms or other dangerous weapons on company premises.
> 11) Absence from scheduled work without permission.
> 12) Walking off the job without permission during working hours.

> 13) Smoking in other than areas designated for smoking.
> 14) Use of snuff or chewing tobacco on company premises.
> 15) Drinking, eating food, or chewing gum in a processing area. This is permitted only in rooms or areas for meals or breaks.
> 16) Violation of no solicitation policy.
> 17) Restricting output or encouraging others to do so.
> 18) Willful or reckless negligence which can result in a safety hazard.
> B. WRITTEN WARNING OR DISMISSAL NOTICE.
> 1) Discourtesy or rudeness that would affect the company's good will.
> 2) Operating machines or equipment not assigned to you by your supervisor.
> 3) Failure to turn off equipment when leaving your work station.
> 4) Using company equipment for personal reasons without management approval.
> 5) Sleeping or deliberately loafing during working hours.
> 6) Violation of established safety rules.
> 7) Abusive language.
> 8) Unsatisfactory work performance.
> 9) Failure to report personal work injury to your supervisor.
> 10) Habitual tardiness or excessive absenteeism.
> 11) False statements about other employees.
> 12) Contributing to unsanitary or unsafe conditions.
> (Emphasis added.)

**3.** The "Terminations" section of the Handbook reads:

> *Terminations*
> The specific kinds of terminations are defined as:

DCA argues that such a termination constitutes a termination "for cause," and that the magistrate erred in awarding Farnsworth severance pay.

■ In considering the issue before us, we note that the primary aim in interpreting all contracts is to ascertain the mutual intent of the parties at the time their contract was made. *Rutter v. McLaughlin*, 101 Idaho 292, 612 P.2d 135 (1980); *USA Fertilizer v. Idaho First Nat. Bank*, 120 Idaho 271, 815 P.2d 469 (Ct.App.1991). That intent should, if possible, be ascertained from the language of the agreement, as the words used by the parties are deemed to be the best evidence of their intent. *USA Fertilizer*, 120 Idaho at 273, 815 P.2d at 471. Thus, where the parties' intention is clear from the language of their contract, its interpretation and legal effect are to be resolved by the court as a matter of law. *Luzar v. Western Sur. Co.*, 107 Idaho 693, 692 P.2d 337 (1984).

■ However, where the parties' mutual intent cannot be understood from the language used, intent becomes a question for the trier of fact, to be ascertained in light of extrinsic evidence. *Luzar*, 107 Idaho at 697, 692 P.2d at 341; *USA Fertilizer*, 120 Idaho at 273, 815 P.2d at 471. If, after applying the ordinary processes of interpretation and considering the relevant extrinsic evidence, there remains doubt as to the actual, mutual intent of the parties, then the ambiguity should be resolved against the party who used the ambiguity in drafting the contract. *Luzar*, 107 Idaho at 697, 692 P.2d at 341; *Werry v. Phillips Petroleum Co.*, 97 Idaho 130, 540 P.2d 792 (1975); *Big Butte Ranch, Inc. v. Grasmick*, 91 Idaho 6, 415 P.2d 48 (1966); *USA Fertilizer*, 120 Idaho at 274, 815 P.2d at 472; *see also* 3 CORBIN ON CONTRACTS § 559 (1960).[4]

We conclude, as did the magistrate, that the parties' intent is not clear from the Handbook's language, but that the severance pay clause is reasonably susceptible of the two conflicting interpretations alleged by the parties. As noted earlier, resolution of such ambiguity presents a question of fact to be determined by resorting to extrinsic evidence of the parties' mutual intent. We note that while DCA submitted lengthy testimony concerning the company's intended policy on severance pay, it offered no evidence to show that it had communicated this intent to Farnsworth, except through issuance of the ambiguously-drafted Handbook. Aside from the language of the Handbook itself, neither party presented any evidence to dispute the alleged understanding of the other. Consequently, the sole question for the magistrate to determine was which of the two conflicting inferences should be drawn from the Handbook's language. Noting the summary judgment standard in *Riverside*, which permits the judge in a case that would be tried to the court to resolve conflicting inferences from the undisputed evidentiary facts, the magis-

Resignations—voluntary termination made by employee.

Mutual agreement—decision to end employment relationship made by both employee and management for their mutual benefit.

Reduction in force—elimination of positions unilaterally determined by management.

Unsatisfactory performance—due to employee's failure to meet performance standards, complete tasks in a competent way, or to maintain adequate attendance.

Misconduct—misbehavior, such as, persistent refusal to do work reasonably expected, the wrongful use or theft of DCA property, or conviction of a felony. These examples of misconduct are not all inclusive, but applies to other standards of behavior which an employer has the right to expect of employees.

4. Professor Corbin emphasizes that the rule "contra proferentem," that ambiguous language be resolved against its drafter, is one of last resort. 3 CORBIN ON CONTRACTS § 559, at 268 (1969). The rule applies only when the fact finder is forced to make a choice between two reasonable interpretations; it does not apply to override evidence of the meaning of the parties, but aids in determining the legal effect where meaning remains in doubt. *USA Fertilizer v. Idaho First Nat. Bank*, 120 Idaho 273, 274, 815 P.2d 469, 470 (Ct.App.1991); *accord Luzar v. Western Sur. Co.*, 107 Idaho 693, 700, 692 P.2d 337, 344 (1984) (Bakes, J., dissenting). Professor Corbin also notes:

This doubt may be so great that the court should hold that no contract exists. If, however, it is clear that the parties tried to make a valid contract, and the remaining doubt as to the proper interpretation is merely as to which of two possible and reasonable meanings should be adopted, the court will adopt that one which is the less favorable in its legal effect to the party who chose the words.

3 CORBIN ON CONTRACTS § 559, at 262.

trate applied the rule of contract interpretation that ambiguity should be resolved against its drafter, in this case, against DCA. Construing the ambiguous language against DCA and in favor of Farnsworth, the magistrate held that a termination resulting from a reduction in force is not a termination "for cause." We conclude that the language in the Handbook supports this interpretation, and accordingly we will not disturb it on appeal.

**2. Does the evidence raise genuine issues of material fact precluding summary judgment?**

■ DCA next contends the evidence it presented which shows that Farnsworth accepted its offer of continued employment, albeit in another position, raises a genuine issue of material fact precluding summary judgment. Both of the lower courts held this factual issue to be immaterial, concluding that even if Farnsworth had accepted employment in a new position, he nonetheless would be entitled to severance pay according to the provisions the Handbook. We find this conclusion to be in error.

It is undisputed that on March 15, Farnsworth was given oral, but not written, notice that his position as a supervisor would be eliminated on April 1, and that he was offered employment in a different position, to begin April 1, 1991. Assuming, as we must for purposes of summary judgment, that Farnsworth accepted the offer later that same day, DCA would have had no reason to provide him a further *written* notice of termination; both parties would have expected the employment relationship to continue, not terminate. Farnsworth's acceptance of the offer of continued employment would have superceded DCA's previous notice of termination, and hence its obligation pursuant to the Handbook to put that notice in writing.

■ It has been suggested that even if Farnsworth accepted the lower-paying position and then voluntarily resigned, he should still be entitled to severance pay because the Handbook specifically defines "resignation" as a type of "termination," and because there was no written notice. We are not persuaded. By its own terms the Handbook's severance pay clause applies only to *involuntary* terminations. The clause is clearly aimed at situations in which "[i]t becomes necessary to terminate an employee...." Furthermore, a requirement of written notice simply has no application where the employee voluntarily chooses, unilaterally or mutually with the employer, to terminate the employment relationship. Accordingly, we hold that the severance pay clause does not apply where an employee voluntarily terminates the employment relationship.

■ Based on the foregoing, we conclude that the factual dispute as to whether Farnsworth accepted DCA's offer of continued employment raises an issue material to Farnsworth's right to severance pay. As explained above, a termination due to reduction in force is a termination "without cause." Hence, if Farnsworth's termination was due to a reduction in force, then he is entitled to severance pay because he did not receive two weeks written notice. However, if DCA proves that Farnsworth did accept its offer of continued employment, but then voluntarily withdrew his acceptance or resigned, then Farnsworth would not be eligible for severance pay.

**Conclusion**

The district court's decision upholding the magistrate's order on summary judgment is affirmed in part and vacated in part. The case is remanded for further proceedings consistent with this opinion.

The appellant, Dairymen's Creamery Association, is entitled to an award of its costs pursuant to I.A.R. 40. No attorney fees are awarded on appeal.

LANSING and PERRY, JJ., concur.