844 P.2d 1349

**Thomas CHRISTENSEN, d/b/a Tom's Chemicals & Fertilizers, Plaintiff–Appellant,**

v.

**Max S. RANSOM and Rodney S. Ransom, d/b/a Ransom Angus Ranch, Defendants–Respondents.**

No. 18716.

Court of Appeals of Idaho.

Aug. 20, 1992.

Rehearing Denied Jan. 21, 1993.

Blaser, Sorensen & Hansen, Blackfoot, for plaintiff-appellant. Stephen J. Blaser argued.

Johnson & Meikle, Idaho Falls, for defendants-respondents. David A. Johnson argued.

SILAK, Judge.

This case involves a question whether a contract for the sale of farm equipment was formed. Thomas Christensen allegedly bought two tractors, two drills, and a baler from Rodney and Max Ransom for $40,000. Christensen claims that he agreed to lend $40,000 to the Ransoms to help them finance a lawsuit against the Farmer's Home Administration (FmHA). Christensen sued the Ransoms for payment of an alleged promissory note. The Ransoms counterclaimed for payment on the contract for the sale of farm machinery. Sitting without a jury, the trial court found that a contract for the sale of machinery had been formed and that Christensen owed the Ransoms $20,000. Christensen appeals arguing that the district court made several legal and factual errors in reaching its decision. We affirm the judgment of the district court.

The facts of this case are as follows. In October, 1984, the Ransoms needed additional funds to pay attorney fees and costs in their suit against the FmHA. The Ransoms discussed their lawsuit and their need for funding with Christensen's nephew. The nephew arranged a meeting between Christensen and the Ransoms. During the first meeting and subsequent meetings, Christensen and the Ransoms discussed various options, including a $20,000 loan, or in the alternative, a sale and purchase of farm equipment. The parties did not negotiate a written agreement during the fall of 1984.

In March, 1985, Christensen and the Ransoms reentered negotiations. The testimony is conflicting on the substance of the negotiations; however, a bill of sale was

prepared by the Ransoms' attorney and on March 22, 1985, it was signed by the Ransoms and notarized at the office of an attorney chosen by Christensen. The bill of sale stated:

### BILL OF SALE

We, MAX S. RANSOM and RODNEY S. RANSOM, doing business as RANSOM ANGUS RANCH, residing at 248 Valley Drive, Idaho Falls, Idaho, hereby on this day, March 8, 1985, sell to THOMAS CHRISTENSEN, residing south of Shelley, Idaho, the following farm machinery for the sum of $40,000.

Two 12 foot International Press Wheel Grain Drills
Model 620, Serial No. 0390168C007203
Serial No. 0390168C007233
Two Massey Ferguson Tractors
Model 1500, Serial No. 9C001212
Serial No. 9C003689
One Freeman Baler
Model 330, Serial No. 63921
Motor Serial No. 453699

Sellers are the lawful owners of the machinery listed above, and said machinery is free from all liens and encumbrances. Sellers have good right to sell the machinery and will warrant and defend the right against lawful claims and demands of all persons.

Christensen did not sign the bill of sale; however, he had the document recorded in the county recorder's office. On the same day Christensen signed a check to the Ransoms for $20,000.

The Ransoms' attorney also prepared a document titled "Agreement for Option to Repurchase Machinery." Under this agreement, the Ransoms would have had the option to repurchase the farm machinery for the same price at which it was sold, two years from the date the agreement was signed. According to Max Ransom's testimony, Christensen refused to consider an option to repurchase. The document was never signed by any of the parties. Three days later, on March 14, 1985, the Ransoms signed a second document which was typed on a form with the name and

address of Christensen's business printed on the top right corner. The second document stated:

We, Max S. Ransom and Rodney S. Ransom doing business as Ransom Angus Ranch ... received from Thomas Christensen the sum of $20,000.00 plus other valuable considerations for the following Machinery.
2—12 ft. International Press Wheel Grain Drills
2—Massey Ferguson Tractors
1—Freeman Baler
Bill of Sale is recorded Bingham County[,] Blackfoot, Idaho[.]

There was conflicting testimony on the question whether the actual purchase price of the farm equipment was $20,000 or $40,000. The dispute was based, in part, on the existence of the second document. After hearing the testimony and weighing the evidence, the trial court found that the bill of sale was the written evidence of the terms of the contract and that the second document was a receipt for the initial $20,000 payment on the $40,000 debt.

Christensen did not take physical possession of the equipment at the time he made the $20,000 payment. In the spring of 1985, Christensen told the Ransoms that they could use the grain drills if they kept track of the usage. He also asked that another farmer, Duane Haggart, be allowed to use the grain drills. Christensen told the Ransoms that he had no immediate need for the equipment. He stated that he would make the final payment when he came to pick up the equipment. Christensen never made further payment on the equipment.

In March, 1987, Christensen and his nephew went to the Ransom's ranch to take the equipment. The Ransoms refused to allow Christensen to take the machinery because they had not received the final payment. According to the testimony of Max Ransom, Christensen threatened to sue the Ransoms for breach of the sale contract and for breach of a promissory note. Christensen held a photocopy of a signed promissory note for $40,000 up to the passenger window of the pickup truck

in which he was sitting. The promissory note was never submitted to the district court.

Later that month, Christensen filed a complaint against the Ransoms alleging they had breached a contract for the sale of farm equipment. The alleged purchase price of the equipment was $20,000. Christensen also alleged that the Ransoms had agreed to repurchase the farm equipment in one year for $40,000. Christensen attached a copy of the bill of sale as an exhibit to his complaint.

The Ransoms answered the complaint and filed a counterclaim. In their answer, they denied that the purchase price was $20,000. With respect to the alleged agreement to repurchase, they asserted the affirmative defenses of unconscionability, the statute of frauds, lack of consideration, failure to perform condition precedent, fraud, constructive fraud, and duress. As a remedy, the Ransoms asked the court to rescind the alleged contract to repurchase. In the counterclaim, they alleged a breach of the purchase contract. They alleged that the purchase price of the farm equipment was $40,000 and that Christensen had paid $20,000. The counterclaim allowed for a potential offset for the Ransoms' use of the equipment but requested an additional offset for the cost of storing the equipment.

In his reply to the counterclaim, Christensen denied that the purchase price for the equipment was $40,000 and denied that he had only partially performed the contract. Christensen raised no affirmative defenses to the counterclaim. At the time of trial, Christensen changed his position and alleged that the transaction was actually a loan which was secured by the farm equipment in question.

The dispute was tried before the district court, sitting without a jury. Following the trial, the court held that the parties had entered into a contract for the sale of farm equipment for $40,000 and that the contract was governed by Article 2 of the Uniform Commercial Code, I.C. § 28-2-201 through § 28-2-725. The court held that, even though Christensen had not signed the bill of sale, the contract was not barred by the statute of frauds because Christensen had admitted the existence of the contract in his complaint and because the conduct of the parties showed that they recognized the contract. The court further held that Christensen took effective possession of the equipment by authorizing other people to use it. The court also held that the risk of loss and depreciation passed to Christensen at the time the Ransoms delivered the bill of sale. The court held that the document which was signed on March 14, 1985, was a receipt for the $20,000 Christensen initially paid on the contract. The court found that Christensen breached the contract and ordered Christensen to pay the balance of the contract. The court allowed an offset against the judgment of $247.80, the reasonable rental value of the equipment for the time the Ransoms used it. The district court awarded interest, costs, and attorney fees to the Ransoms.

After the judgment was entered, Christensen moved to amend the findings of fact and conclusions of law. He withdrew the first motion to amend and later filed a second motion to amend. In the second motion, Christensen claimed that the fact that the Ransoms originally paid only $30,000 for the equipment and the fact that he had no need for the equipment supported his contention that the transaction was a loan rather than a sale. Christensen also claimed that the serial numbers on the machinery were different from the serial numbers listed on the bill of sale; he argues that because of this, the Ransoms had no right to sell him the equipment. Christensen also claimed that the reasonable rental for the grain drills was $2.00 per acre and the charge for the use of the tractor should have been $160.00 per day beginning on March 15, 1985. Christensen further argued that any ambiguity in the bill of sale should have been construed against the Ransoms because their attorney drafted the document. He also argued that the computation of interest was incorrect. Finally, he asked the district court to reweigh the evidence and acknowledge the alleged inconsistency and lack of credibility of the Ransoms' testimony.

On May 7, 1990, Christensen filed a notice of appeal and a motion for a new trial. The motion for a new trial was based on the court's allegedly erroneous admission of an edited cassette tape of a telephone conversation. The motion was also based on the discovery of new evidence in the form of liens on the equipment which was the subject of the contract. On June 19, 1990, Christensen filed a motion to disqualify the district judge. The motion was based on Christensen's affidavit stating that the judge had represented a party opposing Christensen in a lawsuit fifteen years earlier.

On June 28, 1990, the district court held a hearing on the motion to disqualify, the motion to amend the findings of fact and conclusions of law, and the motion for a new trial. The court held that it did not have jurisdiction to rule on the motion for disqualification because an appeal had already been filed, and denied the other two motions on the basis that they were not timely filed. The court noted that both motions would have been denied on a substantive basis even if they had been timely filed.

Christensen appeals from the judgment and from the orders denying his post trial motions. He contends that the district court erred in making factual findings; he specifically challenges the finding regarding his possession of the equipment. He argues that the district court found the wrong purchase price because the value of the equipment was lower than the purchase price of $40,000. He contends that the court erred in admitting the audiotape into evidence. He asserts that the court erred in its conclusion that the sale contract was not barred by the statute of frauds. He also contends for the first time on appeal that the court erred by not rescinding the contract. He also raises for the first time on appeal the defenses that no contract was formed because there was no meeting of the minds, and that it would have been impossible for him to perform under the contract because the bill of sale did not list the correct serial numbers on the equipment. Finally, he contends that the trial court erred in awarding attorney fees to

the Ransoms. We address these various arguments below.

## I. ISSUES FIRST RAISED ON APPEAL

■ Christensen raises the defenses of impossibility and no meeting of the minds on contract terms. He also argues that the district court should have rescinded the contract. We have reviewed the clerk's record, the transcript of the proceedings, and the exhibits in this case. Our review of the record indicates that these issues were not raised at trial. It is well established in Idaho that an appellate court is not required to review issues on appeal unless they have previously been presented to the lower court for determination. *Kinsela v. State Dept. of Finance*, 117 Idaho 632, 634, 790 P.2d 1388, 1340 (1990); *Manookian v. Blaine County*, 112 Idaho 697, 700, 735 P.2d 1008, 1011 (1987); *Baldner v. Bennett's, Inc.*, 103 Idaho 458, 460, 649 P.2d 1214, 1216 (1982); *State ex rel. Evans v. Click*, 102 Idaho 443, 449, 631 P.2d 614, 620 (1981), *cert. denied* 457 U.S. 1116, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982); *Brooks v. Brooks*, 119 Idaho 275, 278, 805 P.2d 481, 484 (Ct.App.1990). Because these issues were not raised below, we will not address them on appeal.

## II. THE POST-TRIAL MOTIONS

■ We turn next to the question whether the district court erred in denying Christensen's post-trial motions. We first address the issue whether the court erred in ruling that it did not have jurisdiction to rule on the motion to disqualify. Having reviewed the record, we note that Christensen did not raise the issue of bias on the part of the trial court until after the judgment had been entered and an appeal had been filed. Christensen filed a notice of appeal on May 7, 1990. He filed the motion to disqualify on June 19, 1990. Once an appeal has been filed, the authority of the district court is limited; in a civil action, the district court may rule on certain motions and take certain actions which are enumerated in I.A.R. 13(b). Idaho Appellate Rule 13(b) does not provide the district

court with the authority to rule on a motion to disqualify a judge after an appeal has been filed. Thus, the district court correctly ruled that it did not have the authority to rule on Christensen's motion. In addition, where Christensen did not raise the issue of the trial court's claimed bias prior to or during trial, we will not consider the issue on appeal. *Greenstreet v. Greenstreet*, 65 Idaho 36, 46, 139 P.2d 239, 243 (1943).

■ We turn next to the motion to amend the findings of fact and conclusions of law and the motion for a new trial. The judgment in this case was filed on April 5, 1990.[1] On April 17, 1990, Christensen filed a motion to amend the findings of fact and conclusions of law. He withdrew the first motion to amend and filed a second motion to amend on May 7, 1990. A motion to alter or amend the judgment in a civil action shall be served not later than fourteen days after the entry of the judgment. I.R.C.P. 59(e). Because Christensen withdrew the first motion, we consider the time of service of the motion to be the date of the filing of the second motion, May 7, 1990. The second motion was filed on the thirty-second day after the entry of the judgment. This is well outside the fourteen-day requirement of I.R.C.P. 59(e). Consequently, we hold that the district court correctly denied the motion for untimeliness.

The same analysis applies to Christensen's motion for a new trial. The motion was filed on May 7, 1990, thirty-two days after the judgment was entered. In a civil case, the motion for a new trial must be served within fourteen days after the entry of the judgment. I.R.C.P. 59(b); *McIntire v. Orr*, 122 Idaho 351, 834 P.2d 868 (1992). The motion for a new trial was served well outside the fourteen-day requirement of I.R.C.P. 59(b). Thus, the district court cor-

rectly denied the motion because it was untimely.

### III. THE STATUTE OF FRAUDS

■ We turn next to the question whether the district court erred when it held that the contract satisfied the statute of frauds. The Ransoms argue that this defense was not raised in the pleadings and should not be considered on appeal. We draw a distinction between an issue not formally raised below and an issue that was never raised below. *Manookian*, 112 Idaho at 700, 735 P.2d at 1011. Where an issue never surfaced below, it is not proper for it to be raised on appeal; however, I.R.C.P. 15(b) states, "When issues not raised ... are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." *Id.* The district court ruled on the statute of frauds issue so it must have been raised and considered below. Thus, the issue is properly before this Court on appeal. *See id.* (issue of conflict of interest on the part of members of the board of county commissioners was considered and passed upon, even though it was not formerly presented, when they disqualified themselves from zoning process and issue was thus properly before the appellate court).

Under the Uniform Commercial Code (UCC), I.C. §§ 28–1–101 through 28–10–104, the parties to a contract for the sale of goods must memorialize their contract in writing in order for it to be enforceable. Idaho Code Section 28–2–201(1) states:

**Statute of Frauds.**—(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the

---

1. The district court filed a memorandum decision, findings of fact, conclusions of law, and judgment on April 5, 1990. The judgment included an award of interest on the amount outstanding on the contract. The court filed an amended judgment on April 23, 1990 which included an award of costs and attorney fees and a recalculation of the accrued interest.

While postjudgment orders relating to the final judgment are independently appealable under I.A.R. 11(a)(7), the entry of supplemental orders does not affect the time to file either a motion for a new trial or a motion to amend the original judgment. *See, e.g., Ziemann v. Creed*, 121 Idaho 259, 260, 824 P.2d 190, 191 (Ct.App.1992).

parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Invoking this section, Christensen contends that the contract for the sale of the farm equipment is unenforceable because there is no writing, signed by him, which indicates that the contract was formed. We disagree.

■ The UCC provides that a contract not satisfying the statute of frauds is nonetheless enforceable if the party against whom the enforcement is sought admits in his testimony that a contract was made. I.C. § 28-2-201(3)(b); *Faw v. Greenwood,* 101 Idaho 387, 390, 613 P.2d 1338, 1341 (1980). As the plaintiff in this case, Christensen alleged the existence of a contract to purchase equipment for $20,000. He attached a copy of the bill of sale to his complaint. Under this circumstance, he cannot rely upon the defense of the statute of frauds to avoid the enforcement of the contract.

We turn then to the question of the extent of Christensen's admission. Comment 7 to I.C. § 28-2-201 states:

If the making of a contract is admitted in court, either in a written pleading, by stipulation or by oral statement before the court, no additional writing is necessary for protection against fraud. Under this section it is no longer possible to admit the contract in court and still treat the Statute as a defense. *However, the contract is not thus conclusively established. The admission so made by a party is itself evidential against him of the truth of the facts so admitted and of nothing more;* as against the other party, it is not evidential at all.

Christensen admitted the existence of the contract with a purchase price of $20,000. He did not admit to a purchase price of $40,000. Though his admission prevents him from successfully asserting the statute of frauds, it does not establish the terms of the contract.

In order to determine the terms of the contract, the district court looked to the confirmatory memoranda supporting the existence of the contract. In this case, the contract was formed by the conduct of the parties and was never reduced to a final written expression. Thus, the bill of sale and the document which the district court characterized as a receipt are merely evidence of the terms of the contract.

■ Idaho Code § 28-2-207(3) addresses additional terms in documents evidencing acceptance or confirmation of a contract; it states:

Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act.

In considering this issue, we note that the primary aim in interpreting all contracts is to ascertain the mutual intent of the parties at the time the contract was made. *Luzar v. Western Surety Co.,* 107 Idaho 693, 697, 692 P.2d 337, 341 (1984); *USA Fertilizer, Inc. v. Idaho First Nat. Bank,* 120 Idaho 271, 273, 815 P.2d 469, 471 (Ct. App.1991); *see also Rutter v. McLaughlin,* 101 Idaho 292, 293, 612 P.2d 135, 136 (1980). The intent of the contracting parties should, if possible, be ascertained from the language of the agreement, as the words used are the best evidence of the parties' intent. *USA Fertilizer, Inc.,* 120 Idaho at 273, 815 P.2d at 471; *Abel v. School District No. 413,* 108 Idaho 982, 985, 703 P.2d 1357, 1360 (Ct.App.1985); RESTATEMENT (SECOND) OF CONTRACTS § 202 (1981). Though our first resort in construing the parties' agreement is to the instrument itself, where, as here, no final written expression of the contract exists, the intent of the parties becomes a question of fact to be determined in light of extrinsic evidence. *See, e.g., USA Fertiliz-*

*er, Inc.*, 120 Idaho at 273, 815 P.2d at 471 (court allowed parol evidence to explain terms of letter of guarantee which was issued pending bank's approval of operating loan); *Jensen v. Westberg*, 109 Idaho 379, 381, 707 P.2d 490, 492 (Ct.App.1985) (case remanded for factual determination of parties' intent in light of conflicting extrinsic evidence regarding meaning of cost overruns); *Interform Co. v. Mitchell*, 575 F.2d 1270, 1278 (9th Cir.1978) (federal court interpreting Idaho law held that lower court correctly determined intent of parties regarding integration of written documents by examining all the documents employed, the circumstances surrounding their execution, and the subsequent conduct of the parties).

■ A trial court's factual findings will not be disturbed on appeal where there is substantial evidence to support those findings. *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 946, 949, 812 P.2d 253, 256 (1991). In this case, the district court admitted the confirmatory memoranda as evidence and considered the testimony of the parties regarding the circumstances of the creation and execution of the documents. Having heard the testimony and weighed the credibility of the witnesses, the district court found that the bill of sale correctly listed the purchase price as $40,000. The district court also found that the second document, in which the Ransoms acknowledged the receipt of $20,000 from Christensen, was merely a receipt and was not conflicting evidence of the terms of the sale. The facts support this finding: Christensen recorded the bill of sale at the county recorder's office; he gave the Ransoms a check for $20,000; three days later Christensen asked the Ransoms to sign a receipt for the $20,000 partial payment. The Ransoms understood the sale price for the machinery to be $40,000. When Christensen failed to pay them the additional $20,000, they refused to give him possession of the equipment. Having reviewed the record, we conclude that there is substantial evidence to support the district court's findings on this issue. Thus, we will not disturb those findings on appeal.

## IV. ADMISSION OF THE AUDIOTAPE

We turn next to the question whether the court erred in admitting the audiotape of a conversation between the Ransoms, and Christensen and his nephew. During the trial, Christensen testified that he had never had a conversation with the Ransoms regarding a promissory note. On rebuttal, Rodney Ransom testified that the conversation had taken place and that he had tape-recorded the conversation without Christensen's knowledge. The tape recording was allegedly made while the four men were standing outside in a field. An edited copy of the original audiotape was admitted for the purpose of impeaching Christensen. The original was not available because it had been lost.

Under the Idaho Rules of Evidence, there is a preference in favor of original instruments [2] as opposed to copies or other secondary sources of information. I.R.E. 1002. Duplicates are admissable to the same extent as the original unless there is a question regarding the authenticity of the original or there is a question of fairness in admitting the duplicate. I.R.E. 1003. A duplicate is "a counterpart produced by ... by mechanical or electronic re-recording ... which accurately reproduces the original." I.R.E. 1001(4).

In its comments on I.R.E. 1003, the Idaho Evidence Committee said:

To qualify as a duplicate, the counterpart must be the product of a method which insures accuracy and genuineness as defined in Rule 1001(4).

Only when a substantial question is raised as to the authenticity of either the original or the duplicate, or in other circumstances when it would be unfair to admit the duplicate in place of the original, should the original be insisted upon. The rule purposely fails to attempt to

---

**2.** For purposes of Article X of the Idaho Rules of Evidence, writings and recordings "consist of letters, words, sounds, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electrical recording, or other form of data compilation." I.R.E. 1001(1).

define circumstances where it would be unfair to admit a duplicate, leaving this issue to the broad discretion of the court for decision on a case-by-case basis. *See generally* 5 J. Weinstein & M. Berger, *Weinstein's Evidence,* para. 1003[03] (Supp.1983).

G. Bell, *Handbook of Evidence for the Idaho Lawyer* p. 362 (1987). As noted in the comments, the admissibility of a duplicate is left to the discretion of the trial court. Thus, we will not reverse the trial court's ruling on admissability absent an abuse of discretion on the part of the trial court.

■■■When an exercise of discretion is reviewed on appeal, the appellate court conducts a multi-tiered inquiry. The sequence of the inquiry is (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *O'Dell v. Basabe,* 119 Idaho 796, 813, 810 P.2d 1082, 1099 (1990); *Associates Northwest, Inc. v. Beets,* 112 Idaho 603, 605, 733 P.2d 824, 826 (Ct.App.1987). In this case the district court recognized the issue as one of discretion and the court reached its decision through an exercise of reason. There is a question whether the court's choice was consistent with the applicable legal standards.

■■■ The Ransoms admitted that the duplicate of the tape recording was an edited version of the original and that the original had been lost. The Ransoms argue that the re-recording was an accurate reproduction of the portions of the conversation which were audible and which were relevant for the purpose of establishing that a conversation had taken place. We reject this argument. The duplicate did not meet the standards set forth in I.R.E. 1001(4), because it was a version of the original edited by only one party, and thus did not accurately reproduce the original tape recording. *Compare Christensen v. State Farm Mutual Auto Ins. Co.,* 52 Haw. 80,

470 P.2d 521, 524 (1970) (a transcribed statement to an insurance adjuster was admissable where the adjuster testified that the tape from which the statement was transcribed had not been edited). Therefore, it should not have been admitted.

■■■ We note also that the duplicate tape recording should not have been admitted because there was a genuine question regarding the authenticity of the original. *See* I.R.E. 1003. The Ransoms admitted that the original tape had "turned on and off" when Rodney Ransom's jacket blew in the wind. This raises a significant question regarding the admissability of the original tape had it been available.

For these reasons we conclude that the district court did not make its decision within the legal standards applicable to the admission of duplicate recordings. The duplicate tape should not have been admitted into evidence.

■■■ Having concluded that the tape should not have been admitted into evidence, we must determine the effect of the erroneous ruling. Under I.R.E. 103, error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. In this case, the duplicate audiotape was admitted to impeach Christensen's testimony regarding an alleged conversation about a promissory note. This case was tried before the district court without a jury. Having reviewed the court's comments at the time the tape was admitted and the court's comments at the hearing on the motions to amend the judgment and the motion for a new trial, we conclude that the court's determination of Christensen's credibility was most significantly impacted by his attempt to prove a transaction different from the one he admitted in his complaint. In addition, as the Ransoms point out in their appellate brief, there are other significant substantive conflicts in Christensen's testimony regarding the nature of the transaction, the time the payment was to be made, and the time and place at which the "receipt" was signed. Based on these facts, we conclude that the erroneous admission

of the duplicate tape had no significant effect on the district court's determination of Christensen's credibility. Thus, error in the admission of the duplicate tape was harmless.

## V. ATTORNEY FEES

 We turn finally to the issue of attorney fees. The relevant statute in deciding this issue is I.C. § 12–120(3) which states in pertinent part:

> In any civil action to recover on [a] ... contract relating to the purchase or sale of goods, ... unless otherwise provided by law, the prevailing party *shall* be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

The Ransoms' counterclaim was an action to recover on a contract for the sale of goods. Because the Ransoms prevailed on their claim below, and because we affirm the judgment of the district court on the contractual issue, we conclude that they are the prevailing parties on appeal. The Ransoms are thus entitled to an award of attorney fees and costs in both the lower court and on appeal. Pursuant to I.C. § 12–120(3), we affirm the award of attorney fees and costs by the district court and award the Ransoms attorney fees and costs on appeal. I.A.R. 40 and 41.

## CONCLUSION

In conclusion, we decline to address Christensen's arguments regarding rescission of the contract, failure to establish a meeting of the minds, and impossibility of performance because these issues were raised for the first time on appeal. Giving deference to the district court's findings of fact, we conclude that there was sufficient evidence to support a finding that Christensen admitted the existence of the contract; thus, the contract is not barred by the statute of frauds. We also conclude that the district court abused its discretion in admitting an edited, duplicate copy of an audiotape of a conversation between the parties; however, the erroneous admission of the audiotape does not require reversal because it did not have a significant impact on the court's determination of Christensen's credibility. We affirm the district court's award of attorney fees and costs.

The judgment of the district court is affirmed. Costs and attorney fees to respondents.

SWANSTROM, J., and HART, J., Pro Tem., concur.