967 P.2d 284

Carolyn L. ESTES, Plaintiff–Appellant,

v.

Clay Allan BARRY and Gwyn Barry, husband and wife, Defendants–Respondents.

No. 23797.

Supreme Court of Idaho,
Boise, January 1998 Term.

Oct. 26, 1998.

Jim Jones & Associates, Boise, for appellant. Jim Jones argued.

Ellsworth, May, Sudweeks, Stubbs, Ipsen & Perry, Boise, for respondents. Timothy P. Fearnside argued.

SCHROEDER, Justice.

This is an appeal from the district court's order granting summary judgment in favor of defendants-respondents Clay and Gwyn Barry (the Barrys) and against plaintiff-appellant Carolyn L. Estes (Estes), in an action arising from the sale of real property.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

Estes entered into a written agreement to purchase a home and lot located at 12113 DeMeyer Street in Boise from the Barrys. As part of the purchase price, Estes agreed to assume the Barrys' existing loan issued by the Federal Housing Authority (FHA). The Barrys' loan was initially established under the FHA section 235 mortgage subsidy program, in which the federal government subsidizes a portion of a homeowner's mortgage payments in an effort to assist lower income families to acquire housing. The dispute in this case concerns the responsibilities of the parties for recapture obligations imposed under the § 235 program.

When the Barrys purchased the property in 1983 they obtained a § 235 loan and executed a promissory note, wherein they agreed to pay recapture obligations imposed under the § 235 program. The recapture provisions provided that the Barrys would repay the federal government either the amount of mortgage assistance payments paid on the property or fifty percent (50%) of the net appreciation of the property, whichever was less, if they either (1) sold the property to a party not eligible for § 235 mortgage assistance, or (2) rented the property for more than one (1) year. The note

was secured by a deed of trust, dated February 4, 1983, and signed by the Barrys in favor of the Department of Housing and Urban Development (HUD).

In January 1991, the Barrys entered into a written agreement (purchase agreement) to sell their home to Estes for $59,500 with $13,900 to be paid in cash at closing and the balance to be credited by Estes' agreement to assume the FHA loan in the approximate amount of $45,600. The purchase agreement provided that the Barrys would convey title free and clear of all liens and encumbrances except for the FHA loan in the amount of $45,600.

Prior to closing Estes made several inquiries concerning the extent of her liability under the § 235 program's recapture provisions. Realtor Barbara Areitio (Areitio), the sellers' agent,[1] told Estes that she would only be responsible for the recapture obligation which accrued during her period of ownership, not for any recapture amount which had accrued during the Barrys' ownership. Areitio also told Estes that the Barrys' portion of the recapture obligation would be paid in full at closing. Areitio testified that at the time of closing she noticed an item on the Barrys' closing statement entitled "Repay govt.— $2,597" and that both she and the escrow officer thought this represented a payoff of the Barrys' recapture. According to Areitio, they both advised Estes that at the time of closing there were no liens against the property other than the $45,600 loan obligation.

Ten days prior to closing Estes received a promissory note required by HUD which evidenced her assumption of the § 235 loan. The note set forth the terms of the § 235 recapture, in part, as follows:

1. The amount owed under this Note is the lesser of the following:

(a) The amount of mortgage assistance payments (Assistance) paid by the Secretary in accordance with Section 235 of the National Housing Act on *behalf of*

---

1. Written disclosure was made to Estes that Areitio and broker, White–Riedel Realtors, represented the sellers (the Barrys). However, Areitio testified in her deposition that Estes was "her client." The Barrys dispute the issue of agency,

but concede, for purposes of their motion for summary judgment, that this Court should assume that Areitio was the Barrys' agent at the time she made the alleged misrepresentations to Estes.

*the borrower or other homeowner under a note and deed of trust dated February 4, 1983, and bearing FHA Case No. 121–0056462–266 (Insured Deed of Trust).*

(b) Fifty percent of the Net Appreciation of the property covered by the Insured Deed of Trust (Property)....

The note referenced that it was secured by the prior deed of trust executed by the Barrys:

This Note is secured by a Deed of Trust dated February 4, 1983 and executed by Clay Allan Barry and Gwyn Barry in connection with certain property described therein. *Any Assistance paid by the Secretary on behalf of any homeowner, other than the borrower, under the insured Deed of Trust shall be included in the amount computed under paragraph 1(a) for the purpose of taking action against the Property, not for taking action against the undersigned personally.*

(Emphasis added).

At the closing the parties executed various documents, including an assumption agreement wherein Estes agreed to assume the Barrys' loan in the approximate amount of $45,500.[2] The Barrys' executed and delivered a warranty deed conveying title to Estes. The warranty deed indicated that it was subject to a deed of trust securing an indebtedness in the amount of $47,500, and an Addendum for recapture of § 235 assistance, dated February 4, 1983.

In the fall of 1995 Estes applied for a home equity loan and learned for the first time that the property was subject to a recapture obligation which had accrued during the Barrys' period of ownership. Using the HUD recapture formula pertaining to appreciation, Estes estimated that at the time she purchased the property there was a recapture obligation on the property of at least $5,250. Estes' request for the home equity loan was denied due to the outstanding recapture obligation.

Estes made demand upon the Barrys to compensate her in the amount of their recap-

ture obligation. When this proved unsuccessful, she instituted this action, claiming that the Barrys had breached their contractual promise in the purchase agreement to convey title free and clear of all liens and encumbrances, excepting the loan amount of $45,600. Estes also claimed that the Barrys breached the covenant of good faith and fair dealing. The Barrys moved for summary judgment. In the hearing on the Barrys' motion, Estes argued that the Barrys were also liable for fraudulent misrepresentations made by their agent, Areitio. The Barrys objected, arguing that the fraud issue was not properly before the district court because Estes had not pled fraud with particularity in her complaint. The Barrys also argued that, even if the district court liberally construed Estes' complaint as alleging a fraud claim, the claim was without merit.

The district court granted summary judgment to the Barrys concluding: (1) the parol evidence rule and the doctrine of merger precluded Estes' breach of contract claim, (2) Estes was put on notice that the property was subject to HUD recapture obligations prior to delivery of the warranty deed, and (3) even if Estes' complaint were liberally construed to give rise to a cause of action for fraud, that claim would also fail as a matter of law because (a) nothing in the record indicated that the Barrys prevented Estes from reading the documents she signed, and (b) the alleged misrepresentations were statements of law and, thus, not actionable.

Estes argues that whether the doctrine of merger applies is a question of intent which should have been decided by a jury. Further, Areitio's statements were statements of fact and, even if the statements were statements of law, the statements constitute actionable fraud because a special relationship existed between Areitio and herself. The Barrys argue that Estes' breach of contract claim is precluded by the doctrine of merger and because the damages she alleges are too speculative. The Barrys also maintain that Estes should be precluded from raising the issue of fraud on appeal because fraud was

---

**2.** The figure representing the amount of the FHA loan indebtedness Estes agreed to assume varied slightly from document to document; however, the approximate amount of the loan indebtedness was $45,600.

not pled with particularity in her complaint, nor did it form the basis of the district court's decision. The Barrys seek an award of attorney fees on appeal based on a provision in the purchase agreement.

## II.

### ESTES' BREACH OF CONTRACT CLAIM IS BARRED BY THE DOCTRINE OF MERGER.

This Court in *Jolley v. Idaho Securities, Inc.*, 90 Idaho 373, 414 P.2d 879 (1966) explained the doctrine of merger as follows:

It is a well established rule of law that prior stipulations are merged in the final and formal contract executed by the parties, and this rule applies to a deed or a mortgage based upon a contract to convey. When a deed is delivered and accepted as performance of the contract to convey, the contract is merged in the deed. Though the terms of the deed may vary from those contained in the contract, the deed alone must be looked to to determine the rights of the parties....

. . . .

There is an exception to the rule stated, which is that the contract of conveyance is not merged upon execution of a deed where under the contract the rights are conferred collaterally and independent of the deed; there being no presumption that the party in accepting the deed intends to give up the covenants of which the deed is not a performance or satisfaction. Where the right claimed under the contract would vary, change, or alter the agreement in the deed itself, *or inheres in the very subject-matter with which the deed deals, a prior contract covering the same subject-matter cannot be shown as against the provisions of the deed.*

*Id.* at 382–83, 414 P.2d at 884 (emphasis in the original) (quoting *Continental Life Ins. Co. v. Smith*, 41 N.M. 82, 64 P.2d 377, 380 (1936)). As to the question of intent, the *Jolley* court noted:

[W]here there are stipulations in such preliminary contract of which the delivery and acceptance of the deed is not a performance, the question to be determined is whether the parties have intentionally surrendered or waived such stipulations. If such intention appears in the deed, it is decisive; if not, then resort may be had to other evidence.

*Id.* at 383, 414 P.2d at 884–85 (quoting *Continental Life Ins. Co.*, 64 P.2d at 381).

The express terms of the warranty deed indicate that conveyance of title is subject to a deed of trust indebtedness in the amount of $47,500 *and* a recapture obligation which obligates the homeowner to repay, upon the happening of two specific events, all mortgage assistance payments made on behalf of that homeowner and on the behalf of any preceding homeowner, or fifty percent (50%) of the net appreciation of the property, whichever is less.

The question in applying *Jolley* is whether Estes' right to assume only the $45,600 indebtedness, as expressed in the purchase agreement, is a right which would "vary, change, or alter the agreement" in the warranty deed. In other words, is the Barrys' promise in the purchase agreement to convey title free and clear of any and all liens, except the $45,600, inconsistent with the parties' agreement reflected in the warranty deed? Estes argues that the right to assume a limited amount of indebtedness is a right commonly not addressed in a deed and is, therefore, a "collateral and independent" right which survived merger.

The Barry's promise in the purchase agreement to convey title free and clear of all liens and encumbrances, other than the $45,600, is inconsistent with the agreement in the warranty deed. The language in the warranty deed states that conveyance of title is subject to a deed of trust, dated February 4, 1983, which secures an indebtedness of $47,500 *and* certain § 235 recapture obligations described in an addendum to the February 4, 1983, deed of trust. The express language in the addendum is that "[t]he debt secured by this instrument shall include not only the Note recited above but also any assistance paid by the Secretary in accordance with Section 235 of the National Housing Act *on behalf of any party to the deed of trust (including any party who takes title to the property subject to the said Deed of Trust or*

*assumes said Deed of Trust*)" (Emphasis added). An agreement that Estes would assume only an indebtedness of $47,500 is inconsistent with the agreement in the warranty deed. Accordingly, the doctrine of merger applies, and Estes' breach of contract claim is barred.

By affirming the district court's entry of summary judgment in favor of the Barrys with regard to Estes' contract claim, it is not necessary for us to address the issue of whether Estes' alleged damages are too speculative to support a breach of contract claim.

## III.

### ESTES IS PRECLUDED FROM RAISING THE ISSUE OF FRAUD FOR THE FIRST TIME ON APPEAL.

In *Beco Construction Co. v. City of Idaho Falls,* 124 Idaho 859, 865 P.2d 950 (1993), this Court recognized the general rule that "a cause of action not raised in a party's pleadings may not be considered on summary judgment nor may it be considered for the first time on appeal." *Id.* at 865, 865 P.2d at 956. Estes argues that she asserted the essential elements of fraud in her complaint. However, a review of her complaint indicates that she asserted only two causes of action—Count I was a breach of contract claim and Count II was a claim for breach of the covenant of good faith and fair dealing. A claim of fraud must be pled with particularity. I.R.C.P. 9(b). *See also G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 518, 808 P.2d 851, 855 (1991) ("The party alleging fraud must support the existence of each of the elements of the cause of action for fraud by pleading with particularity the factual circumstances constituting fraud."); *Witt v. Jones,* 111 Idaho 165, 168, 722 P.2d 474, 477 (1986) (to the extent that a plaintiff's claim is premised on fraudulent acts of the defendant, "it is essential that [the plaintiff] plead with particularity factual allegations of such fraud."). Estes' complaint does not plead with particularity the factual circumstances constituting fraud.

Nevertheless, Estes claims that, even if she did not plead fraud with particularity, the fraud issue is properly before this Court because the parties had both argued the issue below and the district court had specifically ruled on the issue. Estes cites to *Christensen v. Ransom,* 123 Idaho 99, 844 P.2d 1349 (Ct.App.1992), in support of her argument. In *Christensen,* the Court of Appeals addressed the question of whether the statute of frauds issue had been properly preserved for appeal, despite the fact that the issue had not been raised in the pleadings below. Citing to Rule 15(b) of the Idaho Rules of Civil Procedure (I.R.C.P.), the court determined that the issue had been raised below, through the implied or express consent of the parties. *Id.* at 104, 844 P.2d at 1354. Rule 15(b) provides: "When issues not raised by the pleading[s] are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Noting that the district court had ruled on the statute of frauds issue, the *Christensen* court concluded that the issue must have been raised and considered below and, therefore, was proper for appellate review. *Id.*

*Christensen* involved a trial on the merits; whereas, the present case was disposed of in summary judgment proceedings. Rule 15(b) applies only to unpled theories that are litigated through the submission of evidence at a trial of the cause on the merits, and not to factual issues raised in a motion for summary judgment. *See Fila U.S.A., Inc. v. Kim,* 884 F.Supp. 491, 494 n. 1 (S.D.Fla.1995), cited in 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1494, at 6 (Supp.1998) (construing Federal Rule of Civil Procedure 15(b) which is identical to Idaho's I.R.C.P. 15(b)).

The real question in this case is whether *Beco* is controlling or whether the Court should follow the reasoning in *Northcutt v. Sun Valley Co.,* 117 Idaho 351, 787 P.2d 1159 (1990), in which the Court decided a constitutional issue that was apparently not raised by the plaintiff before the trial court. The Court in *Northcutt* decided the constitutional question, in part, on the basis that the issue had been presented to the trial court by the defendant and "the trial court [had] held the Act constitutional." *Id.* at 356, 787 P.2d at 1164.

This case falls within the reasoning of *Beco* and not *Northcutt.* Fraud is a cause of action that must be pled with particularity

and which requires clear and convincing evidence to establish. On the other hand, the plaintiff's claim in *Northcutt* that the statute in issue was unconstitutional did not constitute a cause of action, nor was there any requirement that the complaint assert that the statute was unconstitutional. The question of constitutionality only arose when the defendant relied upon the statute as a defense and noted that similar statutes had been determined to be constitutional. *Id.* at 353, 787 P.2d at 1161. In addition, the constitutional issue was raised before the trial court by the very party that contended the issue was not properly before the Supreme Court.

Unlike *Northcutt*, the Barrys did not raise the fraud issue before the district court. Rather, they expressly objected to consideration of the issue by the district court, affording Estes the opportunity to seek amendment to properly assert the fraud claim. The fraud issue was not preserved for review simply because the district court ruled on the issue. The district court ruled on the fraud issue (ultimately finding it to be without merit) only after first acknowledging the Barrys' objection that the issue should not be considered because it had not been properly pled. By addressing the fraud issue, the district court was simply preserving the record for review, giving the appellate court the benefit of its thinking both as to the question of whether the unpled claim should be addressed and whether the unpled claim had any merit.

In sum, because Estes' complaint did not plead with particularity the factual circumstances constituting fraud, nor was the fraud issue expressly or impliedly "tried" by consent of the parties, Estes is precluded from raising the issue for the first time on appeal.

## IV.

### THE ISSUE OF WHETHER THE BARRYS ARE ENTITLED TO AN AWARD OF ATTORNEY FEES ON APPEAL IS NOT PROPERLY BEFORE THE COURT.

The Barrys argue they are entitled to attorney fees on appeal pursuant to the parties' purchase agreement which provided, in part, as follows:

LITIGATION COSTS. In the event either party hereto institutes legal action in order to enforce its rights under this agreement, the prevailing party shall be entitled to an award by the court of reasonable attorney's fees and costs.

The district court ruled that this contractual provision merged into the deed at the time of closing and that it no longer has any effect. The Barrys did not appeal the district court's holding, nor did they set forth any authority or make any argument in their brief regarding why this provision should serve as a basis for an award of attorney fees on appeal. During oral argument, the Barrys did argue that some states have recognized that attorney fee agreements are collateral agreements which survive merger and, therefore, the contractual provision remains effective. After oral argument, the Barrys submitted legal authority allegedly in support of their position, citing to Idaho Appellate Rule 34(f).

Idaho Appellate Rule 34(f) allows a party, prior to issuance of an opinion, to augment his or her brief with *additional* authority. It does not, however, allow a party to augment his or her brief with authority, when the brief originally filed contained no authority. Generally, "a party waives an issue cited on appeal if either authority or argument is lacking." *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996); I.A.R. 35. Because the Barrys' original brief contained no argument or authority in support of their request for attorney fees on appeal, the issue is not properly before the Court and will not be considered.

## V.

## CONCLUSION

The district court's grant of summary judgment in favor of the respondents is affirmed. The Barrys are awarded costs. No attorney fees are awarded.

TROUT, C.J., and JOHNSON, SILAK and WALTERS, JJ., concur.