# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 38484

| | |
|---|---|
| WASHINGTON FEDERAL SAVINGS, a United States Corporation, | ) ) ) Boise, August 2012 Term |
| Plaintiff-Respondent, | ) ) 2012 Opinion No. 138 |
| v. | ) ) Filed: November 16, 2012 |
| H. CRAIG VAN ENGELEN and, KRISTEN VAN ENGELEN, | ) ) Stephen W. Kenyon, Clerk ) |
| Defendants-Appellants. | ) ) |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

The decision of the district court is <u>affirmed</u>. Attorney's fees on appeal are awarded to Respondent.

Banducci Woodard Schwartzman PLLC, Boise, attorneys for appellants. Thomas Banducci argued.

Wishney Law, Boise, attorneys for respondent. Terry C. Copple argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

Two real estate developers, a husband and wife, operated through various entities including a corporation and an LLC. In 2002, the corporation borrowed money from a lender; the developers, in their individual capacities, guaranteed this loan and all future advances. The corporation promptly repaid this loan. In 2005, the LLC twice borrowed money from the same lender. The lender originally insisted on a personal guaranty for these loans, but, in order to secure the developer's business, stated that no personal guaranty would be required.

In 2006–07, the corporation again borrowed money from the lender in six separate loans. The corporation defaulted on these six loans, and, after the lender foreclosed on the real estate that served as collateral for the loans, the lender sued the developers for the deficiency. The district court granted the lender's motion for summary judgment, holding that the developers' affirmative defenses (1) were barred by the statute of frauds, (2) failed for lack of consideration, and (3) raised no genuine issues of material fact. The developers timely appealed to this Court.

1

We hold that the developers' affirmative defenses are neither barred by the statute of frauds nor fail for lack of consideration. However, because none of those defenses raise a genuine issue of material fact, we affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Henry Craig Van Engelen and Kristen Lee Van Engelen (collectively "the Van Engelens"), a husband and wife, are experienced real estate developers. Due to the procedural posture of this case, we construe the following facts in their favor. The Van Engelens finance their projects through Van Engelen Development, Inc. ("VED"), of which they are the controlling shareholders, and Northwest Development Company, LLC ("NWD"), of which they are the controlling members.

In 2002, VED borrowed $126,000 from Washington Federal Savings ("Washington Federal"). The Van Engelens, in their individual capacities, personally guaranteed VED's repayment—as well as the repayment of any future advances by Washington Federal to VED—through a document titled "Continuing General Guaranty Agreement" (the "Continuing Guaranty"). The Van Engelens waived notice of such future advances, but retained the right to stop guaranteeing new loans made to VED by sending a written notice to Washington Federal. The Continuing Guaranty never mentioned NWD. VED paid back the 2002 loan in full within one year.

The Van Engelens forgot that they signed the Continuing Guaranty, which is unsurprising given that Mr. Van Engelen typically did not read such documents. Because they forgot about the Continuing Guaranty, the Van Engelens never sent a termination notice to Washington Federal in order to avoid personal liability for later loans to VED. In late 2004, Washington Federal approached the Van Engelens to solicit their business, without specifying whether it wished to loan money to NWD or VED. Soon thereafter, the Van Engelens learned of the proposed sale of a multimillion-dollar real estate development and construction project, the Carriage Hill Development Phases Three and Four (the "Carriage Hill Project"). After negotiating an agreement with the seller to purchase the Carriage Hill Project, the Van Engelens solicited proposals from various lenders, including Washington Federal.

In early 2005, Washington Federal submitted a proposal that would have required the Van Engelens to sign a personal guaranty. The Van Engelens refused, explaining that they had decided not to sign any more personal guarantees. Washington Federal accepted this condition and, as a result, NWD accepted two loans from Washington Federal. Upon signing one of the

loans, Mr. Van Engelen asked whether there were "personal guarantees associated with this loan." A Washington Federal employee assured him that there were none, due to the Van Engelens' longstanding relationship with Washington Federal and the longevity of their company. At some point, the Van Engelens became confused about which entity received the 2005 loans. In affidavits submitted in 2010, the Van Engelens erroneously stated that these loans were to VED. In fact, these loans were made to NWD, and Washington Federal has not alleged that the Continuing Guaranty applies to these loans.

In 2006 and 2007, Washington Federal extended six loans to VED for development of the Carriage Hill Project. Washington Federal never reminded the Van Engelens of the existence of the Continuing Guaranty, although it customarily gave such a reminder. Eventually, VED defaulted on the six loans; after a foreclosure sale, a deficiency of $4,452,809.67 remained.

Washington Federal sued the Van Engelens for the balance on the 2006–07 VED loans pursuant to the Continuing Guaranty. The district court granted Washington Federal's Motion for Summary Judgment, rejecting the Van Engelens' numerous affirmative defenses. Ruling from the bench, the district court construed the Van Engelens' affirmative defenses as attempts to modify the Continuing Guaranty, and held that those defenses were barred by the statute of frauds and failed for lack of consideration. Separately, the district court recognized that the assurances regarding the 2005 NWD loans were irrelevant to the 2006 and 2007 VED loans because NWD and VED were separate entities. The district court rejected all of the Van Engelens' affirmative defenses, held that no genuine issues of material fact remained, and entered a final judgment from which the Van Engelens timely appealed to this Court.

### III. ISSUES ON APPEAL

A.      Are the Van Engelens' affirmative defenses barred by the statute of frauds?

B.      Do the Van Engelens' affirmative defenses fail for lack of consideration?

C.      Do the Van Engelens' affirmative defenses present any genuine issues of material fact?

D.      Is either party is entitled to attorney's fees on appeal?

### IV. STANDARD OF REVIEW

"When reviewing a grant of summary judgment, this Court applies the same standard of review used by the district court in ruling on the motion." *Mortensen v. Stewart Title Guar. Co.*, 149 Idaho 437, 441, 235 P.3d 387, 391 (2010). A grant of summary judgment is warranted where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

3

a judgment as a matter of law." I.R.C.P. 56(c). The moving party bears the burden of proving the absence of any issue as to any material fact. *Blickenstaff v. Clegg*, 140 Idaho 572, 577, 97 P.3d 439, 444 (2004). The facts must be liberally construed in favor of the non-moving party. *Renzo v. Idaho State Dep't of Agric.*, 149 Idaho 777, 779, 241 P.3d 950, 952 (2010).

## V. ANALYSIS

**A.      The Van Engelens' Affirmative Defenses Are Not Barred by the Statute of Frauds.**

Idaho's statute of frauds requires most guaranty agreements to be evidenced by a writing signed by the guarantor. *See* I.C. § 9-505(2); I.C. § 9-506 (exceptions). Modifications to a contract may fall within the statute of frauds. *See Southern v. Southern*, 92 Idaho 180, 181–82, 438 P.2d 925, 926–27 (1968); *USA Fertilizer, Inc. v. Idaho First Nat'l Bank*, 120 Idaho 271, 275–76, 815 P.2d 469, 473–74 (Ct. App. 1991); *see also Best v. Edwards*, 176 P.3d 695, 699–700 (Ariz. Ct. App. 2008) (collecting cases); *Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 258 P.3d 539, 549 (Utah 2011).

The Van Engelens do not allege that the Continuing Guaranty was modified. A modification, like a contract, requires a meeting of the minds. *Idbeis v. Wichita Surgical Specialists, P.A.*, 112 P.3d 81, 93 (Kan. 2005); *Richard Barton Enters. v. Tsern*, 928 P.2d 368, 373 (Utah 1996); *Jones v. Best*, 950 P.2d 1, 5 (Wash. 1998); *see also Thomas v. Thomas*, 150 Idaho 636, 645, 249 P.3d 829, 838 (2011) (stating general requirement that all contracts require a meeting of the minds). Here, the Van Engelens did not recall signing the Continuing Guaranty, and therefore could not have had a meeting of the minds with Washington Federal regarding its modification. Their defenses are not based on changing the terms of the Continuing Guaranty. Rather, the Van Engelens allege that the Continuing Guaranty is unenforceable, or, if it is enforceable, that Washington Federal is not entitled to all of the damages that the district court awarded. Such defenses are not subject to the statute of frauds. *See Ogden v. Griffith*, 149 Idaho 489, 495, 236 P.3d 1249, 1255 (2010) (equitable estoppel); *Garner v. Bartschi*, 139 Idaho 430, 437, 80 P.3d 1031, 1038 (2003) (quasi estoppel); *Burton v. Atomic Workers Fed. Credit Union*, 119 Idaho 17, 22, 803 P.2d 518, 523 (1990) (equitable estoppel); *Idaho Migrant Council, Inc. v. Nw. Mut. Life Ins. Co.*, 110 Idaho 804, 806–07, 718 P.2d 1242, 1244–45 (Ct. App. 1986) (waiver).

Washington Federal claims that *USA Fertilizer, Inc. v. Idaho First Nat'l Bank*, 120 Idaho 271, 815 P.2d 469 (Ct. App. 1991) is to the contrary. However, none of the affirmative defenses that the Van Engelens have raised were at issue in *USA Fertilizer*. Rather, the Court of Appeals

held that the statute of frauds applied only "to the extent" that one of the parties argued that the terms of a written contract were changed by a subsequent telephone conversation. *See id.* at 275, 815 P.2d at 473.

Only one of the Van Engelens' defenses might be subject to the statute of frauds: their argument that the parties did not intend the Continuing Guaranty to apply to the 2006–07 VED loans. It is unclear whether the Van Engelens base this argument on the terms of the Continuing Guaranty itself, or whether they believe that those terms were modified. It is unnecessary to decide this question: as discussed below, the Continuing Guaranty unambiguously applies to all future advances to VED, and therefore there is no genuine issue of material fact surrounding the parties' intent.

**B.    The Van Engelens' Affirmative Defenses Do Not Fail for Lack of Consideration.**

While both contracts and contract modifications generally must be supported by consideration, *Great Plains Equip., Inc. v. N.W. Pipeline Corp.*, 132 Idaho 754, 769, 979 P.2d 627, 642 (1999), the Van Engelens do not allege that Washington Federal's assurances in 2005 either created a new contract or modified the Continuing Guaranty. Moreover, consideration is not an element of any of their defenses.

**C.    The Van Engelens' Affirmative Defenses Do Not Present Any Genuine Issues of Material Fact.**

Two fatal flaws pervade most of the Van Engelens' affirmative defenses. The first is that the Van Engelens in their personal capacities, VED, and NWD are all distinct. Absent grounds to pierce the corporate veil, a corporation is a separate entity from its shareholders, *see Maroun v. Wyreless Sys., Inc.*, 141 Idaho 604, 616–17, 114 P.3d 974, 986–87 (2005), and a limited liability company is a separate entity from its members, *Vanderford Co. v. Knudson*, 144 Idaho 547, 556–57, 165 P.3d 261, 270–71 (2007). The Van Engelens were not VED or NWD. Nor does common control by the Van Engelens convert VED and NWD into a single entity.

The second fatal flaw is that Washington Federal had no duty to remind the Van Engelens that the Continuing Guaranty existed. The Van Engelens are correct that they did not waive notification that the Continuing Guaranty was still in effect merely by waiving notification of future advances. But, this does not mean that such a right existed in the first instance. The Continuing Guaranty does not require Washington Federal to remind the Van Engelens of its existence, and the common law does not create an implied duty to do so.

5

The Van Engelens' reliance on *Sumitomo Bank of Cal. v. Iwasaki*, 447 P.2d 956 (Cal. 1968) is misplaced. That case discussed a lender's duty to apprise a surety of new facts suggesting that the debtor would default. *Sumitomo* never addressed whether a lender must remind a guarantor of his guaranty agreement. No such duty exists in an arm's-length business transaction between sophisticated parties. *See Easton Bus. Opportunities, Inc. v. Town Exec. Suites*, 230 P.3d 827, 834–35 (Nev. 2010).

Similarly, the Van Engelens' argument that such a duty arose under the Restatement (Second) of Torts § 551 (1977) is unavailing. In order to establish a duty of disclosure under § 551, the Van Engelens would have to show that Washington Federal knew that they were under the misimpression either that they had not entered into the Continuing Guaranty or that it had been revoked. The precise facts in the record cannot reasonably support either conclusion. The Van Engelens never stated in Washington Federal's presence that they had not signed a continuing guaranty. Nor did Washington Federal ever state that it was unilaterally terminating the Continuing Guaranty. And, while there might well be a genuine issue of material fact if Washington Federal attempted to enforce a separate continuing guaranty with respect to the 2005 NWD loans, none of Washington Federal's statements show a conclusive intent to end the Van Engelens' obligations under the Continuing Guaranty, which applied only to the VED loans.

With these two flaws in mind, we analyze each of the Van Engelens' affirmative defenses in turn, and hold that none of them raise a genuine issue of material fact.

### 1. Waiver

"A waiver is a voluntary, intentional relinquishment of a known right or advantage, and the party asserting the waiver must show that he acted in reasonable reliance upon it and that he thereby has altered his position to his detriment." *Knipe Land Co. v. Robertson*, 151 Idaho 449, 457–58, 259 P.3d 595, 603–04 (2011) (quoting advantage *Fullerton v. Griswold*, 142 Idaho 820, 824, 136 P.3d 291, 295 (2006)). Here, it was unreasonable for the Van Engelens to rely on Washington Federal's comments with respect to the 2005 NWD loans to conclude that they were not personal guarantors of the 2006–07 VED loans.

### 2. Equitable Estoppel

The elements of equitable estoppel are:

(1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the

6

person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

*Ogden v. Griffith*, 149 Idaho 489, 495, 236 P.3d 1249, 1255 (2010) (quoting *J.R. Simplot Co. v. Chemetics Int'l, Inc.*, 126 Idaho 532, 534, 887 P.2d 1039, 1041 (1994)). "[O]ne may not assert estoppel based upon another's misrepresentation if the one claiming estoppel had readily accessible means to discover the truth." *Winn v. Campbell*, 145 Idaho 727, 732, 184 P.3d 852, 857 (2008) (quoting *Regjovich v. First W. Invs., Inc.*, 134 Idaho 154, 158, 997 P.2d 615, 619 (2000)). More generally, in the absence of a confidential relationship, a party invoking equitable estoppel must use reasonable care to avoid suffering a loss. *See Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104–05 (9th Cir. 1960); *Dunn v. Dunn*, 281 P.3d 540, 555 (Kan. Ct. App. 2012); *Warren v. Provo City Corp.*, 838 P.2d 1125, 1130 (Utah 1992).

Here, the Van Engelens did not exercise reasonable care to avoid liability. Mr. Van Engelen did not even read the Continuing Guaranty. Although the Van Engelens could have terminated the Continuing Guaranty to avoid any additional personal liability for VED's loans, they failed to do so before they forgot that the Continuing Guaranty even existed. When entering into multi-million-dollar loan contracts, the Van Engelens confused the different entities that they operated through and therefore erroneously assumed that Washington Federal's assurances with respect to NWD applied to VED. Their confusion is unfortunate, but it is their own fault, and they cannot shift the blame to Washington Federal.

The Van Engelens unsuccessfully analogize this case to *Lewis v. Cont'l Life & Accident Co.*, 93 Idaho 348, 461 P.2d 243 (1969). In *Lewis*, an insured worker's widow attempted to collect a death benefit. The insurer denied her claim because her husband had failed to provide periodic proof that he was disabled during the last several years of his life. However, the proof-of-disability requirements in the contract were contradictory and ambiguous, and the insurer's interpretation was contradicted by a handbook that it issued. *Id.* at 354, 461 P.2d at 249. Here, the Continuing Guaranty is unambiguous, and Washington Federal's oral assurances with respect to the 2005 NWD loans in no way contradict the Continuing Guaranty.

3.    Quasi-Estoppel

The elements of quasi-estoppel are:

(1) the offending party took a different position than his or her original position, and (2) either (a) the offending party gained an advantage or caused a disadvantage to the other party; (b) the other party was induced to change

7

positions; or (c) it would be unconscionable to permit the offending party to maintain an inconsistent position from one he or she has already derived a benefit or acquiesced in.

*Mortensen v. Stewart Title Guar. Co.*, 149 Idaho 437, 443, 235 P.3d 387, 393 (2010) (quoting *Terrazas v. Blaine Cnty.*, 147 Idaho 193, 200 n.3, 207 P.3d 169, 176 n.3 (2009)). Because Washington Federal's assurances applied only to the 2005 NWD loans, Washington Federal has not taken a different position by insisting that the Continuing Guaranty applies to the 2006–07 VED loans.

4.     Covenant of Good Faith and Fair Dealing

There exists in every contract an implied covenant of good faith and fair dealing that "requires the parties to perform, in good faith, the obligations required by their agreement." *Commercial Ventures, Inc. v. Rex M. & Lynn Lea Family Trust*, 145 Idaho 208, 217, 177 P.3d 955, 964 (2008) (quoting *Steiner v. Ziegler Tamura Ltd.*, 138 Idaho 238, 242, 61 P.3d 595, 599 (2002)). "If a party to the contract violates, nullifies or significantly impairs any benefit of the contract, that party has violated this covenant." *Id.*

As support for their argument that Washington Federal violated the covenant of good faith and fair dealing, the Van Engelens rely on *Lacrosse State Bank v. Estate of McLoone*, 359 N.W.2d 179 (Wis. Ct. App. 1984) (unpublished). Setting aside the question of whether an unpublished case from a sister state's intermediate court of appeals is persuasive authority, *McLoone* is readily distinguishable. In that case, a forty-five-percent shareholder personally guaranteed a corporation's debts to a bank. After the corporation paid off two loans from the bank, the shareholder sold his interest in the corporation. The bank was aware of this. Nonetheless, after the corporation defaulted on a later loan, the bank sued the former shareholder's estate under his personal guaranty. The court reasoned that the bank knew that the former shareholder "had no reason to guarantee" new loans to the corporation. Here, in contrast, the Van Engelens never sold their interests in VED. They had every reason to guarantee new debts incurred by a corporation of which they remained the controlling shareholders. Nor did Washington Federal's failure to notify the Van Engelens of the existence of the Continuing Guaranty deprive them of any benefit under that contract. *See WXI/Z Sw. Malls v. Mueller*, 110 P.3d 1080, 1088 (N.M. Ct. App. 2005) (landlord's failure to notify guarantors of tenant's rent payments that tenant was in arrears did not violate covenant of good faith and fair dealing because this did not deprive guarantors of any benefit under the contract).

8

5.      Lack of Intent

In an effort to show that the parties did not intend the Continuing Guaranty to apply to the 2006–07 VED loans, the Van Engelens invite us to follow *Cadle Co. v. Newhouse*, 756 N.Y.S.2d 48 (N.Y. App. Div. 2002). In *Cadle*, a wife executed a continuing guaranty when her husband borrowed $50,000 from a bank. The husband paid for this loan by borrowing $75,000 from the bank's successor, and then paid off that loan by borrowing $2 million from the successor. When the husband defaulted, he still owed almost $1.8 million; the successor's assignee sued the wife for the deficiency. The district court granted summary judgment in favor of the assignee, but the appellate court reversed. It noted that the wife raised genuine issues of material fact regarding whether a statute prohibited enforcement of the continuing guaranty and whether the wife's schizophrenia made the guaranty voidable for lack of capacity. *Id.* at 50. Without citing any authority, and without analyzing the language of the guaranty agreement, the court also noted in passing that "it is not clear that the guaranty was intended to apply to anything but the initial $50,000 indebtedness." To the extent that this unsupported dictum has any bearing on the contract now before us, we do not find it persuasive and decline to follow it.

6.      Fraud, Fraudulent Inducement, Misrepresentation, and Discharge

"Fraud consists of '(1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury.' "[1] *Asbury Park, LLC v. Greenbriar Estate Homeowners' Ass'n*, 152 Idaho 338, 345, 271 P.3d 1194, 1201 (2012) (quoting *Taylor v. McNichols*, 149 Idaho 826, 845–46, 243 P.3d 642, 661–62 (2010)). "Fraud may be established by silence where the defendant had a duty to speak." *James v. Mercea*, 152 Idaho 914, 918, 277 P.3d 361, 365 (2012) (quoting *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 521, 808 P.2d 851, 858 (1991)). Such a duty exists:

> (1) if there is a fiduciary or other similar relation of trust and confidence between the two parties; (2) in order to prevent a partial statement of the facts from being misleading; or (3) if a fact known by one party and not the other is so vital that if

---

[1] The Van Engelens note that, according to the pattern civil jury instructions, the ninth element of the defense of fraud—as opposed to a claim of fraud—is: "The defendant [has returned] [has offered to return] to the plaintiff (whatever the defendant would be legally obligated to return in order to prevent his being unjustly enriched)." I.D.J.I 6.27.1 (brackets in original). We were unable to locate any precedent that supports the differing ninth element. However, we decline to rule on this question because it was cursorily briefed and does not affect the outcome here.

9

the mistake were mutual the contract would be voidable, and the party knowing the fact also knows that the other does not know it.

*Id.* at 918–19, 277 P.3d at 365–66 (quoting *Sowards v. Rathbun*, 134 Idaho 702, 707, 8 P.3d 1245, 1250 (2000)). "A promise or statement that an act will be undertaken is actionable, if it is proven that the speaker made the promise without intending to keep it." *Country Cove Dev., Inc. v. May*, 143 Idaho 595, 601, 150 P.3d 288, 294 (2006) (quotation marks and alteration omitted) (citing *Maroun v. Wyreless Sys., Inc.*, 141 Idaho 604, 615, 114 P.3d 974, 985 (2005)).

As explained above, it was unreasonable for the Van Engelens to conclude, based on Washington Federal's statements with respect to the 2005 NWD loans, that Washington Federal would not enforce the Continuing Guaranty with respect to the 2006–07 VED loans.

> 7.  No Damages, Unjust Enrichment, Failure to Mitigate Damages, and Double Recovery

"[A] plaintiff who is injured by actionable conduct of a defendant is ordinarily denied recovery for damages which could have been avoided by reasonable acts, including reasonable expenditures, after actionable conduct has taken place." *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 327, 233 P.3d 1221, 1249 (2010) (quoting *Margaret H. Wayne Trust v. Lipsky*, 123 Idaho 253, 261, 846 P.2d 904, 912 (1993)). "A claim for unjust enrichment requires 'that (1) a benefit is conferred on the defendant by the plaintiff; (2) the defendant appreciates the benefit; and (3) it would be inequitable for the defendant to accept the benefit without payment of the value of the benefit.' " *Cuevas v. Barraza*, 152 Idaho 890, 277 P.3d 337, 344 (2012) (quoting *Teton Peaks Inv. Co. v. Ohme*, 146 Idaho 394, 398, 195 P.3d 1207, 1211 (2008)).

The Van Engelens contend that, because Washington Federal purchased the Carriage Hill Project at the foreclosure sale, it is obliged to construct additional homes on the development and apply the resulting profits against their deficiency. The Van Engelens have not identified any authority that supports this proposition, and we refuse to adopt it. Such a rule would discourage lenders from bidding at foreclosure sales, which in turn would tend to decrease the proceeds of such sales. This would harm both debtors and lenders.

## D. Washington Federal Is Entitled to Attorney's Fees on Appeal; The Van Engelens Are Not.

Idaho Code section 12-120(3) provides in pertinent part that a prevailing party "shall be allowed a reasonable attorney's fee" in "any civil action to recover on . . . [a] guaranty." This is a civil action to recover on a guaranty, and Washington Federal is the prevailing party; therefore,

Washington Federal is entitled to attorney's fees on appeal. The Van Engelens did not prevail and therefore are not entitled to attorney's fees.

## VI. CONCLUSION

The Van Engelens have not defended this lawsuit on the grounds that Washington Federal's 2005 assurances were either a new contract or a modification of the 2002 Continuing Guaranty. Thus, the Van Engelens' affirmative defenses are neither barred by the statute of frauds nor fail for lack of consideration. However, none of those defenses raise a genuine issue of material fact. Therefore, the district court properly granted Washington Federal's Motion for Summary Judgment, and Washington Federal is entitled to attorney's fees on appeal.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON **CONCUR.**